UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MICHAEL SAPIA; CHRISTIAN PELLOT; NEFTALI PELLOT; RAYNIER DELGADILLO; JOHN CARUSI; COLETTE SAJJAD; PRIAMO FERMIN; ROBERT TRACEY; ALEXANDER CAMPBELL; DEVON BAILEY; ANDREA BARNES; ALAN BENNETT; CONRADO BENT; ANTHONY BIRKBECK; WINSTON BLACKWOOD; KENDAL BRAZEL; ERROL BROWN; DIONICIO CHAMBERS; RAVI DHANASAR; FREDERICK DIAZ; RAFAEL DIAZ; CAROL FORREST; LESLIE FRANCIS; CRAIG GILLESPIE; HOWARD HARRISON; KAREEM HINES; SHERBIA JACKSON; BRYAN KELLY; WADE MCKNIGHT; MIGUEL A. MOREL; GARNETT MORGAN; ALI MUHAMMED; CURTIS NEIL; BASHFORD NUMA; JOHN PEREZ; GARY PHIFER; HAMEEN RASULLAH; WILLIAM SMAW; CLINTON SPENCE; VINCENT TAYLOR; SHAMARL WILSON; and JOSCELYN WINT,

|                                           | Civil Action No.          |

**COMPLAINT**

**JURY TRIAL
DEMANDED**

Plaintiffs,

v.

HOME BOX OFFICE, INC.

Defendant.

---

Plaintiffs MICHAEL SAPIA ("Sapia"); CHRISTIAN PELLOT ("C. Pellot"); NEFTALI

PELLOT ("N. Pellot"); RAYNIER DELGADILLO ("Delgadillo"); JOHN CARUSI ("Carusi");

COLETTE SAJJAD ("Sajjad"); PRIAMO FERMIN ("Fermin"); ROBERT TRACEY ("Tracey");

ALEXANDER CAMPBELL ("Campbell"); DEVON BAILEY ("Bailey"); ANDREA BARNES

("Barnes"); ALAN BENNETT ("Bennett"); CONRADO BENT ("Bent"); ANTHONY

BIRKBECK ("Birckbeck"); WINSTON BLACKWOOD ("Blackwood"); KENDAL BRAZEL

("Brazel"); ERROL BROWN ("Brown"); DIONICIO CHAMBERS ("Chambers"); RAVI

DHANASAR ("Dhanasar");  FREDERICK DIAZ ("F. Diaz"); RAFAEL DIAZ ("R. Diaz");

CAROL FORREST ("Forrest");  LESLIE FRANCIS ("Francis"); CRAIG GILLESPIE

("Gillespie"); HOWARD HARRISON ("Harrison"); KAREEM HINES ("Hines"); SHERBIA

JACKSON ("Jackson"); BRYAN KELLY ("Kelly"); WADE MCKNIGHT ("McKnight"); MIGUEL A. MOREL ("Morel"); GARNETT MORGAN ("Morgan"); ALI MUHAMMED ("Muhammed"); CURTIS NEIL ("Neil"); BASHFORD NUMA ("Numa"); JOHN PEREZ ("Perez"); GARY PHIFER ("Phifer"); HAMEEN RASULLAH ("Rasullah"); WILLIAM SMAW ("Smaw"); CLINTON SPENCE ("Spence"); VINCENT TAYLOR ("Taylor"); SHAMARL WILSON ("Wilson"); and JOSCELYN WINT ("Wint") (collectively, "Plaintiffs") by and through their attorneys, VALLI KANE & VAGNINI LLP, bring this action for damages and other legal and equitable relief from Defendant HOME BOX OFFICE, INC. ("Defendant") for violations of the Fair Labor Standards Act ("FLSA"), as amended, 29 U.S.C. §§ 201 *et seq.*, and any other cause(s) of action that can be inferred from the facts set forth herein.

## **INTRODUCTION**

1.      This is a collective action brought by Plaintiffs challenging acts, committed by Defendant against Plaintiffs, which amounted to violations of federal wage and hour laws.

2.      Defendant employed Plaintiffs as Parking Production Assistants ("PPAs"). PPAs' job duties included reserving parking spots, using their personal vehicles, for Defendant's television and/or movie production scenes and production vehicles.

3.      All Plaintiffs were litigants in the FLSA collective action *Fermin, et al. v. Home Box Office Inc., et al.*, 15-cv-07941 (AT)(JCF) (S.D.N.Y. 2015) (the "Lawsuit"), participating as either named plaintiffs or by filing consents to opt into the Lawsuit. The Lawsuit alleged that Defendant violated the FLSA by, among other things, failing to compensate PPAs with an overtime premium for all hours worked in excess of forty (40) hours per workweek.

4.      Following the commencement of the Lawsuit, Defendant retaliated against Plaintiffs for participating by implementing a policy and practice of reducing Plaintiffs' shifts and/or terminating Plaintiffs' employment.

5.      Plaintiffs are entitled to recover: (i) back pay, (ii) benefits, (iii) liquidated damages, (iv) interest, (v) reinstatement, and (vi) attorney fees and costs pursuant to the FLSA and such other and further relief as this Court finds necessary and proper.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; and (iii) under 29 U.S.C. §§  201 *et seq*.

7.      Venue is proper in this Court pursuant to 29 U.S.C. §§ 201 *et seq*., because this judicial district lies within a state in which the unlawful employment practices occurred. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (c), because Defendant maintains facilities, conducts business and resides in this district.

## THE PARTIES

8.      At all relevant times, each and every one of the following Plaintiffs was an "employee" within the meaning of the FLSA and was employed by Defendant within this judicial district:

    a)   Michael Sapia
    b)   Christian Pellot

c)   Neftali Pellot
d)   Raynier Delgadillo
e)   John Carusi
f)   Colette Sajjad
g)   Priamo Fermin
h)   Robert Tracey
i)   Alexander Campbell
j)   Devon Bailey
k)   Andrea Barnes
l)   Alan Bennett
m)   Conrado Bent
n)   Anthony Birkbeck
o)   Winston Blackwood
p)   Kendal Brazel
q)   Errol Brown
r)   Dionicio Chambers
s)   Ravi Dhanasar
t)   Frederick Diaz
u)   Rafael Diaz
v)   Carol Forrest
w)   Leslie Francis
x)   Craig Gillespie
y)   Howard Harrison
z)   Kareem Hines
aa)  Sherbia Jackson
bb)  Bryan Kelly
cc)  Wade McKnight
dd)  Miguel Morel
ee)  Garnett Morgan
ff)  Ali Muhammad
gg)  Curtis Neil
hh)  Bashford Numa
ii)  John Perez
jj)  Gary Phifer
kk)  Rasullah
ll)  William Smaw
mm) Clinton Spence
nn)  Vincent Taylor
oo)  Shamarl Wilson
pp)  Joscelyn Wint

9.      Upon information and belief, Defendant is organized under the laws of the state of

Delaware and has its principal place of business in New York, New York.

10.     Defendant transacted and continues to transact business in New York by employing persons as PPAs and by filming television and movie productions within the state of New York.

11.     Defendant has at all relevant times been an "employer" covered by the FLSA.

12.     Upon information and belief, the amount of qualifying annual volume of business for Defendant exceeds $500,000.00 and thus subjects Defendant to the FLSA.

13.     Upon information and belief, Defendant is engaged in interstate commerce.  This independently subjects Defendant to the FLSA.

## STATEMENT OF THE FACTS

I.     **Facts Common to All Plaintiffs**

    a.     **Facts Pertaining to Plaintiffs' Employment**

14.     Defendant's business consists of, among other things, producing films and television series.

15.     Plaintiffs were employed by Defendant as PPAs.

16.     As PPAs, Plaintiffs' job duties primarily consisted of using their personal vehicles to reserve parking spots for Defendant's production vehicles and equipment.

17.     PPAs were paid on a shift basis.

18.     Plaintiffs were supervised by Parking Coordinators.

19.     Defendant also employed PPA Supervisors to assist Parking Coordinators in supervising PPAs.

20.     PPA Supervisors reported directly to Parking Coordinators and PPAs reported to both the PPA Supervisors and the Parking Coordinators.

21.     Parking Coordinators and PPA Supervisors reported to Defendant, and were employees of Defendant.

22.     Defendant, through its Parking Coordinators and/or PPA Supervisors, assigned Plaintiffs their work schedules.

23.     Defendant communicated the work schedules to Plaintiffs through the Parking Coordinators via telephone and/or text messaging.

24.     Parking Coordinators assigned Plaintiffs to work a number of twelve (12) hour shifts sufficient to staff each day of the workweek, sometimes assigning Plaintiffs to work multiple shifts consecutively for up to several days at a time.

**b. Facts Pertaining to Retaliation**

25.     On October 8, 2015, a collective action—*Fermin*, *et al. v. Home Box Office Inc.*, *et al.*, 15-cv-07941 (AT)(JCF) (S.D.N.Y. 2015)—was commenced against Defendant in the Southern District of New York asserting violations of the FLSA, analogous provisions of the New York Labor Law, and the Wage Theft Prevention Act.

26.     The violations asserted in the Lawsuit included, among others things, Defendant's willful failure to pay PPAs an overtime premium for all hours worked in excess of forty (40) hours per workweek.

27.     Plaintiffs have also participated in other FLSA collective actions against a number of other production companies alleging violations similar to those alleged in the Lawsuit. These actions include, without limitation: *Hines, et al. v. CBS Corporation et al.*, 14-cv-078882 (PGG) (S.D.N.Y. 2015) ("*Hines*"); *Leach, et al. v. Warner Brothers Inc., et al.*, 15-cv-07208 (AT)(JCF) (S.D.N.Y 2015); and *Morgan, et al. v. Warner Bros. Pictures, a division of WB Studio Enterprises Inc., et al.*, 16-cv-01411 (JCF) (S.D.N.Y 2016) (collectively, the "PPA Lawsuits").

28.     Plaintiffs each participated in the Lawsuit as named plaintiffs or by filing consents to opt-in as members of the proposed FLSA collective.

29.     The Lawsuit resulted in a proposed settlement and on or around September 1, 2017, the Court granted final approval of the settlement.

30.     During the pendency of the Lawsuit, however, Defendant engaged in a systematic retaliation scheme against PPAs who participated in the Lawsuit as either named or opt-in plaintiffs.

31.     After the Lawsuit was filed in the Southern District of New York, Defendant began an inquisition into Plaintiffs' participation in the Lawsuit.

32.     For example, Defendant compiled a list of all PPAs who were named and opt-in plaintiffs in the Lawsuit. Furthermore, as PPAs opted into the Lawsuit they were added to Defendant's list.

33.     Defendant learned of Plaintiffs' participation in the Lawsuit from various sources, including directly asking Plaintiffs and other PPAs if they participated in the Lawsuit or knew who did. For example, Defendant's Parking Coordinators and PPA Supervisors spoke to Plaintiffs directly to ask them if they were "involved" in the Lawsuit.

34.     Defendant also had knowledge of Plaintiffs' participation in the Lawsuit from the Court's Case Management/Electronic Case Files website which listed Plaintiffs' names as either parties to the Lawsuit or as opt-in plaintiffs.

35.     Additionally, following the filing of the Lawsuit and the PPA Lawsuits, the New York Times published an article that was comprised of interviews of Plaintiff Campbell, C. Pellot, and Tracey regarding other PPA Lawsuits against other major production companies. The article also featured clear photos of Plaintiff Campbell and Tracey beneath the bright lights of the Ziegfeld Theater. Accordingly, Defendant had knowledge of Plaintiffs Campbell's, C. Pellot's, and Tracey's participation in the Lawsuit from this New York Times' article.

36.     Defendant retaliated against Plaintiffs by reducing the number of shifts they were assigned each workweek and, with respect to certain Plaintiffs, constructively terminating them by refusing to assign them any shifts at all.

37.     Once Defendant learned that Plaintiffs participated in the Lawsuit, Plaintiffs' weekly allotted shifts were reduced from approximately five (5) shifts per workweek to approximately two (2) or fewer shifts per workweek. Certain Plaintiffs were constructively terminated as a result of being assigned no shifts.  This reduction in shifts was not related to any decrease in Defendant's labor needs, or any decline in production activity.

38.     Defendant reduced Plaintiffs' shifts to strategically force Plaintiffs to resign by reducing their pay to levels below those necessary to sustain themselves and their dependents.

39.     Defendant hired new PPAs, who were not involved in the Lawsuit, to replace Plaintiffs.

40.     Throughout the relevant time period, Defendant engaged in film and television productions, which required the employment of PPAs, within the tristate area.

41.     It is common practice in the production industry for different production companies to employ the same Parking Coordinators that their competitors employ. As a result of employing the same Parking Coordinators the unlawful retaliatory practices of certain influential Parking Coordinators spread through this niche industry. It became common practice in the industry to freeze out PPAs who participate in litigation against their employers by denying them work in retaliation for their protected activity.

42.     For example, Maurice Cabrera ("Mr. Cabrera") was employed as a Parking Coordinator by Defendant and also by certain other major production companies. On or around August 9, 2017, Mr. Cabrera, and two (2) PPA Supervisors, Gregory Offutt ("Mr. Offutt") and

David Staton ("Mr. Staton") filed an action, *Cabrera, et al. v. CBS Corporation, et al.*, 17-cv-06011 (CM) (S.D.N.Y. 2017) ("*Cabrera*") with this Court alleging that they were terminated by CBS Corporation and CBS Television studio for being reluctant to terminate PPAs who participated in the *Hines* lawsuit. The *Cabrera* plaintiffs admit in their complaint that CBS Corporation implemented a policy and practice denying work to PPAs who participated in *Hines*. Defendant, here, engaged in the same practice, through Mr. Cabrera and certain of his subordinates and peers, as set forth below.

## II.    Facts Specific to Plaintiff Sapia

43.    Plaintiff Sapia has at all relevant times been an "employee" pursuant to the FLSA.

44.    Plaintiff Sapia was formerly employed by Defendant as a PPA and as a PPA Supervisor.

45.    While employed by Defendant, Plaintiff Sapia was consistently assigned (5) or more shifts per workweek.

46.    On or around February 10, 2016, Plaintiff Sapia opted into the Lawsuit by filing his consent to become a party plaintiff under the FLSA.

47.    Defendant had actual knowledge that Plaintiff Sapia opted into the Lawsuit.

48.    After Defendant learned that Plaintiff Sapia opted into the Lawsuit, Defendant ceased assigning him shifts of work and he was terminated.

49.    In or around April 2016, Defendant summoned Plaintiff Sapia to a meeting.

50.    At that meeting, one of Defendant's Parking Coordinators, Mr. Cabrera, stated that PPAs who participated in the Lawsuit and PPA Lawsuits were to receive less shifts to force their resignation.

51.    He also stated the Lawsuit and the PPA Lawsuits were "getting out of hand."

52.     Mr. Cabrera then stated to Plaintiff Sapia that he was required to remove himself from the Lawsuit and the other PPA Lawsuits in order to continue working as a PPA.

53.     Around the conclusion of the meeting, Mr. Cabrera presented Plaintiff Sapia with a "Working Agreement" to sign.

54.     The Working Agreement required Plaintiff Sapia to remove himself from the Lawsuit and PPA Lawsuits and to cease discussions about it with other PPAs.

55.     Plaintiff Sapia refused to execute the Working Agreement and tore it up in front of Mr. Cabrera.

56.     Subsequently, Defendant ceased assigning shifts to Plaintiff Sapia.

57.     Plaintiff Sapia asked Defendant to assign him shifts to work, but these requests were denied expressly or were ignored.

58.     Defendant constructively terminated Plaintiff Sapia by refusing to assign him any shifts of work in retaliation for opting into the Lawsuit and for refusing to opt-out of it.

**III.     Facts Specific to Plaintiff C. Pellot**

59.     Plaintiff C. Pellot has at all relevant times been an employee pursuant to the FLSA.

60.     Plaintiff C. Pellot was formerly employed by Defendant as a PPA.

61.     While employed by Defendant, Plaintiff C. Pellot was consistently assigned (5) or more shifts per workweek.

62.     Plaintiff C. Pellot was a named plaintiff in the Lawsuit.

63.     Plaintiff C. Pellot filed the Lawsuit on October 8, 2015.

64.     Defendant had actual knowledge that Plaintiff C. Pellot commenced the Lawsuit.

65.     After Defendant learned that Plaintiff C. Pellot commenced the Lawsuit, Defendant ceased assigning him shifts of work and he was terminated.

10

66.     Mr. Cabrera informed Plaintiff C. Pellot that he was no longer getting shifts because of his participation in the Lawsuit and PPA Lawsuits.

67.     Plaintiff C. Pellot asked Defendant to assign him shifts to work, but these requests were denied expressly or were ignored.

68.     Mr. Cabrera required Plaintiff C. Pellot to sign a "Working Agreement" in order to return to work for Defendant. The Working Agreement prevented Plaintiff C. Pellot from, among other things, complaining about the amount of shifts he was received and/or comparing the amount of shifts he received to other PPAs. The Working Agreement thus violated Plaintiff C. Pellot's rights under the FLSA and other federal law laws.

69.     Plaintiff C. Pellot refused to sign the Working Agreement and accordingly he was not assigned any shifts to work.

70.     Defendant constructively terminated Plaintiff C. Pellot by refusing to assign him any shifts of work in retaliation for filing the Lawsuit.

**IV.     Facts Specific to Plaintiff N. Pellot**

71.     Plaintiff N. Pellot has at all relevant times been an employee pursuant to the FLSA.

72.     Plaintiff N. Pellot was formerly employed by Defendant as a PPA.

73.     While employed by Defendant, Plaintiff N. Pellot was consistently assigned (5) or more shifts per workweek.

74.     On or around November 11, 2015, Plaintiff N. Pellot opted into the Lawsuit by filing his consent to become a party plaintiff under the FLSA.

75.     Defendant had actual knowledge that Plaintiff N. Pellot opted into the Lawsuit.

76.     After Defendant learned that Plaintiff N. Pellot opted into the Lawsuit, Mr. Cabrera telephoned Plaintiff N. Pellot and stated to him: "I can't give you no more work" and "what do

you think you're going to get by [by joining the Lawsuit]?" He also demanded that Plaintiff N. Pellot opt-out of the Lawsuit and the PPA Lawsuits, but Plaintiff N. Pellot refused.

77.     After Plaintiff N. Pellot refused to opt-out of the Lawsuit and the PPA Lawsuits, Defendant ceased assigning him shifts of work and he was terminated.

78.     Defendant constructively terminated Plaintiff N. Pellot by refusing to assign him any shifts of work in retaliation for opting into the Lawsuits and for refusing to opt-out of it.

**V.     Facts Specific to Plaintiff Delgadillo**

79.     Plaintiff Delgadillo has at all relevant times been an employee pursuant to the FLSA.

80.     Plaintiff Delgadillo was formerly employed by Defendant as a PPA.

81.     While employed by Defendant, Plaintiff Delgadillo was consistently assigned (5) or more shifts per workweek.

82.     On or around October 30, 2015, Plaintiff Delgadillo opted into the Lawsuit by filing his consent to become a party plaintiff under the FLSA.

83.     Defendant had actual knowledge that Plaintiff Delgadillo opted into the Lawsuit.

84.     Subsequently, Mr. Cabrera stated to Plaintiff Delgadillo that he "messed up" by opting into the Lawsuit and the PPA Lawsuits.

85.     Shortly after opting into the Lawsuit, Defendant ceased assigning Plaintiff Delgadillo any shifts to work.

86.     Plaintiff Delgadillo asked Defendant to assign him shifts to work, but these requests were denied expressly or were ignored.

87.     Accordingly, Defendant constructively terminated Plaintiff Delgadillo.

88.     Defendant constructively terminated Plaintiff Delgadillo by refusing to assign him any shifts of work in retaliation for opting into the Lawsuit.

**VI.     Facts Specific to Plaintiff Carusi**

89.     Plaintiff Carusi has at all relevant times been an employee pursuant to the FLSA.

90.     Plaintiff Carusi was formerly employed by Defendant as a PPA.

91.     While employed by Defendant, Plaintiff Carusi was consistently assigned (5) or more shifts per workweek.

92.     On or around November 9, 2015, Plaintiff Carusi opted into the Lawsuit by filing his consent to become a party plaintiff under the FLSA.

93.     Defendant had actual knowledge that Plaintiff Carusi opted into the Lawsuit.

94.     Subsequently, Defendant's PPA Supervisors, James Gentle, Lloyd Bent ("Mr. Bent"), and Mr. Offutt, stated to Plaintiff Carusi that PPAs who were involved in the Lawsuit and the PPA Lawsuits would no longer be assigned shifts.

95.     After Defendant learned that Plaintiff Carusi opted into Lawsuit, Defendant ceased assigning him shifts of work and he was terminated.

96.     Plaintiff Carusi asked Defendant to assign him shifts to work, but these requests were denied expressly or were ignored.

97.     Defendant constructively terminated Plaintiff Carusi by refusing to assign him any shifts of work in retaliation for opting into the Lawsuit.

**VII.     Facts Specific to Plaintiff Sajjad**

98.     Plaintiff Sajjad has at all relevant times been an employee pursuant to the FLSA.

99.     Plaintiff Sajjad was formerly employed by Defendant as a PPA.

100.    While employed by Defendant, Plaintiff Sajjad was consistently assigned (5) or more shifts per workweek.

101.    On or around July 12, 2016, Plaintiff Sajjad opted into the Lawsuit by filing her consent to become a party plaintiff under the FLSA.

102.    Defendant had actual knowledge that Plaintiff Sajjad opted into the Lawsuit.

103.    Subsequently, Defendant's PPA Supervisor, Caesar Aponte ("Mr. Aponte"), telephoned Plaintiff Sajjad to inquire whether she was involved in the Lawsuit and the PPA Lawsuits. When Plaintiff Sajjad, in fear of losing her job, denied her participation, Mr. Aponte responded that Mr. Cabrera was going to find out who was involved.

104.    After Defendant learned that Plaintiff Sajjad opted into the Lawsuit, Defendant ceased assigning her shifts of work and she was terminated.

105.    Plaintiff Sajjad asked Defendant to assign her shifts to work, but these requests were denied expressly or were ignored.

106.    Defendant constructively Plaintiff Sajjad terminated by refusing to assign her any shifts of work in retaliation for opting into the Lawsuit.

**VIII.   Facts Specific to Plaintiff Fermin**

107.    Plaintiff Fermin has at all relevant times been an employee pursuant to the FLSA.

108.    Plaintiff Fermin was formerly employed by Defendant as a PPA.

109.    While employed by Defendant, Plaintiff Fermin was consistently assigned (5) or more shifts per workweek.

110.    Plaintiff Fermin was a named plaintiff in the Lawsuit.

111.    Plaintiff Fermin filed the Lawsuit on October 8, 2015.

112.    Defendant had actual knowledge that Plaintiff Fermin commenced the Lawsuit.

14

113.    After Defendant learned that Plaintiff Fermin commenced the Lawsuit, Defendant ceased assigning him shifts of work and he was terminated.

114.    After Defendant learned that Plaintiff Fermin commenced the Lawsuit, Mr. Bent stated to Plaintiff Fermin: "why the fuck did you start the Lawsuit."

115.    Plaintiff Fermin asked Defendant to assign him shifts to work, but these requests were denied expressly or were ignored.

116.    Defendant constructively terminated Plaintiff Fermin by refusing to assign him any shifts of work in retaliation for filing the Lawsuit.

## IX.    Facts Specific to Plaintiff Tracey

117.    Plaintiff Tracey has at all relevant times been an employee pursuant to the FLSA.

118.    Plaintiff Tracey was formerly employed by Defendant as a PPA.

119.    While employed by Defendant, Plaintiff Tracey was consistently assigned (5) or more shifts per workweek.

120.    On or around November 6, 2015, Plaintiff Tracey opted into the Lawsuit by filing his consent to become a party plaintiff under the FLSA.

121.    Defendant had actual knowledge that Plaintiff Tracey opted into the Lawsuit.

122.    Subsequently, Plaintiff Tracey participated in a New York Times interview to discuss the Lawsuit and the PPA Lawsuits.

123.    Upon information and belief, after the interview was published, Defendant's Parking Coordinators and/or PPA Supervisors used the article to deter other production companies from hiring Plaintiff Tracey as a PPA by showing the article to other Parking Coordinators and telling them not to hire or employ Plaintiff Tracey.

124. Shortly after opting into the Lawsuit, Defendant ceased assigning Plaintiff Tracey any shifts of work.

125. Plaintiff Tracey asked Defendant to assign him shifts to work, but these requests were denied expressly or were ignored.

126. Accordingly, Defendant constructively terminated Plaintiff Tracey.

127. Defendant constructively terminated Plaintiff Tracey by refusing to assign him any shifts of work in retaliation for opting into the Lawsuit.

**X. Facts Specific to Plaintiff Campbell**

128. Plaintiff Campbell has at all relevant times been an employee pursuant to the FLSA.

129. Plaintiff Campbell was formerly employed by Defendant as a PPA.

130. While employed by Defendant, Plaintiff Campbell was consistently assigned (5) or more shifts per workweek.

131. On or around November 11, 2015, Plaintiff Campbell opted into the Lawsuit by filing his consent to become a party plaintiff under the FLSA.

132. Defendant had actual knowledge that Plaintiff Campbell opted into the Lawsuit.

133. Subsequently, Plaintiff Campbell participated in a New York Times interview to discuss the Lawsuit and the PPA Lawsuits.

134. Upon information and belief, after the interview was published, Defendant's Parking Coordinators and/or PPA Supervisors used the article to deter other production companies from hiring Plaintiff Campbell as a PPA by showing the article to other Parking Coordinators and telling them not to hire or employ Plaintiff Campbell.

135. Shortly after opting into the lawsuit, Defendant ceased assigning Plaintiff Campbell shifts of work.

136.    Plaintiff Campbell asked Defendant to assign him shifts to work, but these requests were denied expressly or were ignored.

137.    Accordingly, Defendant constructively terminated Plaintiff Campbell.

138.    Defendant constructively terminated Plaintiff Campbell by refusing to assign him any shifts of work in retaliation for opting into the Lawsuit.

**XI.    Facts Specific to Plaintiff Bailey**

139.    Plaintiff Bailey has at all relevant times been an employee pursuant to the FLSA.

140.    Plaintiff Bailey was formerly employed by Defendant as a PPA.

141.    While employed by Defendant, Plaintiff Bailey was consistently assigned (5) or more shifts per workweek.

142.    On or around December 21, 2015, Plaintiff Bailey opted into the Lawsuit by filing his consent to become a party plaintiff under the FLSA.

143.    Defendant had actual knowledge that Plaintiff Bailey opted into the Lawsuit.

144.    Shortly after opting into the Lawsuit, Defendant ceased assigning Plaintiff Bailey any shifts to work.

145.    Plaintiff Bailey asked Defendant to assign him shifts to work, but these requests were denied expressly or were ignored.

146.    Accordingly, Defendant constructively terminated Plaintiff Bailey.

147.    Defendant constructively terminated Plaintiff Bailey by refusing to assign him any shifts of work in retaliation for opting into the Lawsuit.

**XII.    Facts Specific to Plaintiff Barnes**

148.    Plaintiff Barnes has at all relevant times been an employee pursuant to the FLSA.

149.    Plaintiff Barnes was formerly employed by Defendant as a PPA.

150. While employed by Defendant, Plaintiff Barnes was consistently assigned (5) or more shifts per workweek.

151. On or around December 8, 2015, Plaintiff Barnes opted into the Lawsuit by filing her consent to become a party plaintiff under the FLSA.

152. Defendant had actual knowledge that Plaintiff Barnes opted into the Lawsuit.

153. On one occasion, Mr. Aponte telephoned Ms. Barnes to inquire whether she was involved in the Lawsuit and the PPA Lawsuits.

154. Shortly after opting into the Lawsuit, Defendant ceased assigning Plaintiff Barnes any shifts to work.

155. Plaintiff Barnes asked Defendant to assign her shifts to work, but these requests were denied expressly or were ignored.

156. On one occasion, Mr. Offutt told Plaintiff Barnes that the reason why she was no longer getting shifts was because she was a participant in the Lawsuit and the PPA Lawsuits.

157. Accordingly, Defendant constructively terminated Plaintiff Barnes.

158. Defendant constructively terminated Plaintiff Barnes by refusing to assign her any shifts of work in retaliation for opting into the Lawsuit.

## XIII. Facts Specific to Plaintiff Bennett

159. Plaintiff Bennett has at all relevant times been an "employee" pursuant to the FLSA.

160. Plaintiff Bennett was formerly employed by Defendant as a PPA.

161. While employed by Defendant, Plaintiff Bennett was consistently assigned (5) or more shifts per workweek.

162.    On or around February 11, 2016, Plaintiff Bennett opted into the Lawsuit by filing his consent to become a party plaintiff under the FLSA.

163.    Defendant had actual knowledge that Plaintiff Bennett opted into the Lawsuit.

164.    Shortly after opting into the Lawsuit, Defendant ceased assigning Plaintiff Bennett any shifts to work.

165.    Plaintiff Bennett asked Defendant to assign him shifts to work, but these requests were denied expressly or were ignored.

166.    Accordingly, Defendant constructively terminated Plaintiff Bennett.

167.    Defendant constructively terminated Plaintiff Bennett by refusing to assign him any shifts of work in retaliation for opting into the Lawsuit.

**XIV.   Facts Specific to Plaintiff Bent**

168.    Plaintiff Bent has at all relevant times been an "employee" pursuant to the FLSA.

169.    Plaintiff Bent was formerly employed by Defendant as a PPA.

170.    While employed by Defendant, Plaintiff Bent was consistently assigned (5) or more shifts per workweek.

171.    On or around October 16, 2015, Plaintiff Bent opted into the Lawsuit by filing his consent to become a party plaintiff under the FLSA.

172.    Defendant had actual knowledge that Plaintiff Bent opted into the Lawsuit.

173.    After opting into the Lawsuit, Defendant ceased assigning Plaintiff Bennett any shifts to work.

174.    Accordingly, Defendant constructively terminated Plaintiff Bent.

175.    Defendant constructively terminated Plaintiff Bent by refusing to assign him any shifts of work in retaliation for opting into the Lawsuit.

19

**XV.    Facts Specific to Plaintiff Birkbeck**

176.    Plaintiff Birkbeck has at all relevant times been an "employee" pursuant to the FLSA.

177.    Plaintiff Birkbeck was formerly employed by Defendant as a PPA.

178.    While employed by Defendant, Plaintiff Birkbeck was consistently assigned (5) or more shifts per workweek.

179.    On or around November 11, 2015, Plaintiff Birkbeck opted into the Lawsuit by filing his consent to become a party plaintiff under the FLSA.

180.    Defendant had actual knowledge that Plaintiff Birkbeck opted into the Lawsuit.

181.    Shortly after opting into the Lawsuit, Defendant ceased assigning Plaintiff Birkbeck any shifts to work.

182.    Plaintiff Birkbeck asked Defendant to assign him shifts to work, but these requests were denied expressly or were ignored.

183.    Accordingly, Defendant constructively terminated Plaintiff Birkbeck.

184.    Defendant constructively terminated Plaintiff Birkbeck by refusing to assign him any shifts of work in retaliation for opting into the Lawsuit.

**XVI.    Facts Specific to Plaintiff Blackwood**

185.    Plaintiff Blackwood has at all relevant times been an "employee" pursuant to the FLSA.

186.    Plaintiff Blackwood was employed by Defendant as a PPA.

187.    While employed by Defendant, Plaintiff Blackwood was consistently assigned (5) or more shifts per workweek.

188.    On or around July 12, 2016, Plaintiff Blackwood opted into the Lawsuit by filing his consent to become a party plaintiff under the FLSA.

189.    Defendant had actual knowledge that Plaintiff Blackwood opted into the Lawsuit.

190.    Shortly after opting into the Lawsuit, Plaintiff Blackwood's weekly allotted shifts were reduced.

191.    Plaintiff Blackwood requested more shifts to work from Defendant, but these requests were ignored and denied.

192.    Defendant reduced Plaintiff Blackwood's allotted shifts reduced in retaliation for opting into the Lawsuit.

**XVII.  Facts Specific to Plaintiff Brazel**

193.    Plaintiff Brazel has at all relevant times been an "employee" pursuant to the FLSA.

194.    Plaintiff Brazel was formerly employed by Defendant as a PPA.

195.    While employed by Defendant, Plaintiff Brazel was consistently assigned (5) or more shifts per workweek.

196.    On or around April 15, 2016, Plaintiff Brazel opted into the Lawsuit by filing his consent to become a party plaintiff under the FLSA.

197.    Defendant had actual knowledge that Plaintiff Brazel opted into the Lawsuit.

198.    Shortly after opting into the Lawsuit, Defendant ceased assigning Plaintiff Brazel any shifts to work.

199.    Plaintiff Brazel asked Defendant to assign him shifts to work, but these requests were denied expressly or were ignored.

200.    Accordingly, Defendant constructively terminated Plaintiff Brazel.

201.    Defendant constructively terminated Plaintiff Brazel by refusing to assign him any shifts of work in retaliation for opting into the Lawsuit.

**XVIII. Facts Specific to Plaintiff Brown**

202.    Plaintiff Brown has at all relevant times been an "employee" pursuant to the FLSA.

203.    Plaintiff Brown was formerly employed by Defendant as a PPA.

204.    While employed by Defendant, Plaintiff Brown was consistently assigned (5) or more shifts per workweek.

205.    On or around April 22, 2016, Plaintiff Brown opted into the Lawsuit by filing his consent to become a party plaintiff under the FLSA.

206.    Defendant had actual knowledge that Plaintiff Brown opted into the Lawsuit.

207.    Shortly after opting into the Lawsuit, Defendant ceased assigning Plaintiff Brown any shifts to work.

208.    Plaintiff Brown asked Defendant to assign him shifts to work, but these requests were denied expressly or were ignored.

209.    Accordingly, Defendant constructively terminated Plaintiff Brown.

210.    Defendant constructively terminated Plaintiff Brown by refusing to assign him any shifts of work in retaliation for opting into the Lawsuit.

**XIX.   Facts Specific to Plaintiff Chambers**

211.    Plaintiff Chambers has at all relevant times been an "employee" pursuant to the FLSA.

212.    Plaintiff Chambers was formerly employed by Defendant as a PPA.

213.    While employed by Defendant, Plaintiff Chambers was consistently assigned (5) or more shifts per workweek.

214.    In or around September 2014, Plaintiff Chambers ceased working as a PPA.

215.    On or around November 2, 2015, Plaintiff Chambers opted into the Lawsuit by filing his consent to become a party plaintiff under the FLSA.

216.    Defendant had actual knowledge that Plaintiff Chambers opted into the Lawsuit.

217.    Shortly after opting into the Lawsuit, Plaintiff Chambers contacted Mr. Cabrera several times about resuming his employment as a PPA, but these requests were denied expressly or were ignored.

218.    Accordingly, Defendants' refused to rehire Plaintiff Chambers in retaliation for opting into the lawsuit.

### XX.    Facts Specific to Plaintiff Dhanasar

219.    Plaintiff Dhanasar has at all relevant times been an "employee" pursuant to the FLSA.

220.    Plaintiff Dhanasar was employed by Defendant as a PPA.

221.    While employed by Defendant, Plaintiff Dhanasar was consistently assigned (5) or more shifts per workweek.

222.    On or around April 22, 2016, Plaintiff Dhanasar opted into the Lawsuit by filing his consent to become a party plaintiff under the FLSA.

223.    Defendant had actual knowledge that Plaintiff Dhanasar opted into the Lawsuit.

224.    Shortly after opting into the Lawsuit, Plaintiff Dhanasar's weekly allotted shifts were reduced.

225.    Plaintiff Dhanasar requested more shifts to work from Defendant, but these requests were ignored and denied.

226. Defendant reduced Plaintiff Dhanasar's allotted shifts reduced in retaliation for opting into the Lawsuit.

### XXI. Facts Specific to Plaintiff F. Diaz

227. Plaintiff F. Diaz has at all relevant times been an "employee" pursuant to the FLSA.

228. Plaintiff F. Diaz was formerly employed by Defendant as a PPA.

229. While employed by Defendant, Plaintiff F. Diaz was consistently assigned (5) or more shifts per workweek.

230. On or around November 20, 2015, Plaintiff F. Diaz opted into the Lawsuit by filing his consent to become a party plaintiff under the FLSA.

231. Defendant had actual knowledge that Plaintiff F. Diaz opted into the Lawsuit.

232. Shortly after opting into the Lawsuit, Defendant ceased assigning Plaintiff F. Diaz any shifts to work.

233. Plaintiff F. Diaz asked Defendant to assign him shifts to work, but these requests were denied expressly or were ignored.

234. Accordingly, Defendant constructively terminated Plaintiff F. Diaz.

235. Defendant constructively terminated Plaintiff F. Diaz by refusing to assign him any shifts of work in retaliation for opting into the Lawsuit.

### XXII. Facts Specific to Plaintiff R. Diaz

236. Plaintiff R. Diaz has at all relevant times been an "employee" pursuant to the FLSA.

237. Plaintiff R. Diaz was formerly employed by Defendant as a PPA.

238. While employed by Defendant, Plaintiff R. Diaz was consistently assigned (5) or more shifts per workweek.

239.    On or around November 20, 2015, Plaintiff R. Diaz opted into the Lawsuit by filing his consent to become a party plaintiff under the FLSA.

240.    Defendant had actual knowledge that Plaintiff R. Diaz opted into the Lawsuit.

241.    Shortly after opting into the Lawsuit, Defendant ceased assigning Plaintiff R. Diaz any shifts to work.

242.    Plaintiff R. Diaz asked Defendant to assign him shifts to work, but these requests were denied expressly or were ignored.

243.    Accordingly, Defendant constructively terminated Plaintiff R. Diaz.

244.    Defendant constructively terminated Plaintiff R. Diaz by refusing to assign him any shifts of work in retaliation for opting into the Lawsuit.

### XXIII. Facts Specific to Plaintiff Forrest

245.    Plaintiff Forrest has at all relevant times been an "employee" pursuant to the FLSA.

246.    Plaintiff Forrest was formerly employed by Defendant as a PPA.

247.    While employed by Defendant, Plaintiff Forrest was consistently assigned (5) or more shifts per workweek.

248.    On or around November 6, 2015, Plaintiff Forrest opted into the Lawsuit by filing her consent to become a party plaintiff under the FLSA.

249.    Defendant had actual knowledge that Plaintiff Forrest opted into the Lawsuit.

250.    In 2015, Plaintiff was injured from a slip and fall incident, which prevented her from working until 2016.

251.    In 2016, when Plaintiff was able to work, she requested shift assignment from Defendant, but was ignored and denied.

252.     Mr. Cabrera stated to Plaintiff Forrest that anyone who was involved in the Lawsuit and the PPA Lawsuits was no longer to receive work from Defendants.

253.     Accordingly, Defendant constructively terminated Plaintiff Forrest.

254.     Defendant constructively terminated Plaintiff Forrest by refusing to assign her any shifts of work in retaliation for opting into the Lawsuit.

### XXIV.   Facts Specific to Plaintiff Francis

255.     Plaintiff Francis has at all relevant times been an "employee" pursuant to the FLSA.

256.     Plaintiff Francis was formerly employed by Defendant as a PPA.

257.     While employed by Defendant, Plaintiff Francis was consistently assigned (5) or more shifts per workweek.

258.     On or around February 8, 2016, Plaintiff Francis opted into the Lawsuit by filing his consent to become a party plaintiff under the FLSA.

259.     Defendant had actual knowledge that Plaintiff Francis opted into the Lawsuit.

260.     Shortly after opting into the Lawsuit, Defendant ceased assigning Plaintiff Francis any shifts to work.

261.     Plaintiff Francis asked Defendant to assign him shifts to work, but these requests were denied expressly or were ignored.

262.     Accordingly, Defendant constructively terminated Plaintiff Francis.

263.     Defendant constructively terminated Plaintiff Francis by refusing to assign him any shifts of work in retaliation for opting into the Lawsuit.

### XXV.   Facts Specific to Plaintiff Gillespie

264.     Plaintiff Gillespie has at all relevant times been an "employee" pursuant to the FLSA.

265.     Plaintiff Gillespie was formerly employed by Defendant as a PPA.

266.     While employed by Defendant, Plaintiff Gillespie was consistently assigned (5) or more shifts per workweek.

267.     On or around October 22, 2015, Plaintiff Gillespie opted into the Lawsuit by filing his consent to become a party plaintiff under the FLSA.

268.     Defendant had actual knowledge that Plaintiff Gillespie opted into the Lawsuit.

269.     Shortly after opting into the Lawsuit, Defendant ceased assigning Plaintiff Gillespie any shifts to work.

270.     Plaintiff Gillespie asked Defendant to assign him shifts to work, but these requests were denied expressly or were ignored.

271.     Accordingly, Defendant constructively terminated Plaintiff Gillespie.

272.     Defendant constructively terminated Plaintiff Gillespie by refusing to assign him any shifts of work in retaliation for opting into the Lawsuit.

**XXVI. Facts Specific to Plaintiff Harrison**

273.     Plaintiff Harrison has at all relevant times been an "employee" pursuant to the FLSA.

274.     Plaintiff Harrison was formerly employed by Defendant as a PPA.

275.     While employed by Defendant, Plaintiff Harrison was consistently assigned (5) or more shifts per workweek.

276.     On or around May 4, 2016, Plaintiff Harrison opted into the Lawsuit by filing his consent to become a party plaintiff under the FLSA.

277.     Defendant had actual knowledge that Plaintiff Harrison opted into the Lawsuit.

278.     Shortly after opting into the Lawsuit, Defendant ceased assigning Plaintiff Harrison any shifts to work.

279.     Plaintiff Harrison received a telephone call from an unknown caller who told Plaintiff Harrison not to participate in the Lawsuit and the PPA Lawsuits. The unknown caller also stated that he "would find out" if Plaintiff Harrison did participate.

280.     Upon information and belief, the unknown caller referred to in the immediately preceding paragraph was a Parking Coordinator or a PPA Supervisor.

281.     Plaintiff Harrison asked Defendant to assign him shifts to work, but these requests were denied expressly or were ignored.

282.     Accordingly, Defendant constructively terminated Plaintiff Harrison.

283.     Defendant constructively terminated Plaintiff Harrison by refusing to assign him any shifts of work in retaliation for opting into the Lawsuit.

**XXVII.     Facts Specific to Plaintiff Hines**

284.     Plaintiff Hines has at all relevant times been an "employee" pursuant to the FLSA.

285.     Plaintiff Hines was formerly employed by Defendant as a PPA.

286.     While employed by Defendant, Plaintiff Hines was consistently assigned (5) or more shifts per workweek.

287.     Plaintiff Hines is the eponymous named plaintiff in *Hines*.

288.     On or around May 4, 2016, Plaintiff Hines opted into the Lawsuit by filing his consent to become a party plaintiff under the FLSA.

289.     Defendant had actual knowledge that Plaintiff Hines opted into the Lawsuit.

290.     Shortly after opting into the Lawsuit, Defendant ceased assigning Plaintiff Hines any shifts to work.

291.   Plaintiff Hines asked Defendant to assign him shifts to work, but these requests were denied expressly or were ignored.

292.   Accordingly, Defendant constructively terminated Plaintiff Hines.

293.   Defendant constructively terminated Plaintiff Hines by refusing to assign him any shifts of work in retaliation for opting into the Lawsuit.

**XXVIII.   Facts Specific to Plaintiff Jackson**

294.   Plaintiff Jackson has at all relevant times been an "employee" pursuant to the FLSA.

295.   Plaintiff Jackson was formerly employed by Defendant as a PPA.

296.   While employed by Defendant, Plaintiff Jackson was consistently assigned (5) or more shifts per workweek.

297.   On or around November 9, 2015, Plaintiff Jackson opted into the Lawsuit by filing her consent to become a party plaintiff under the FLSA.

298.   Defendant had actual knowledge that Plaintiff Jackson opted into the Lawsuit.

299.   Shortly after opting into the Lawsuit, Defendant ceased assigning Plaintiff Jackson any shifts to work.

300.   Plaintiff Jackson asked Defendant to assign him shifts to work, but these requests were denied expressly or were ignored.

301.   Accordingly, Defendant constructively terminated Plaintiff Jackson.

302.   Defendant constructively terminated Plaintiff Jackson by refusing to assign him any shifts of work in retaliation for opting into the Lawsuit.

**XXIX. Facts Specific to Plaintiff Kelly**

303.   Plaintiff Kelly has at all relevant times been an "employee" pursuant to the FLSA.

304.     Plaintiff Kelly was formerly employed by Defendant as a PPA.

305.     While employed by Defendant, Plaintiff Kelly was consistently assigned (5) or more shifts per workweek.

306.     On or around March 8, 2016, Plaintiff Kelly opted into the Lawsuit by filing his consent to become a party plaintiff under the FLSA.

307.     Defendant had actual knowledge that Plaintiff Kelly opted into the Lawsuit.

308.     After opting into the Lawsuit, Defendant ceased assigning Plaintiff Kelly any shifts to work.

309.     Plaintiff Kelly asked Defendant to assign him shifts to work, but these requests were denied expressly or were ignored.

310.     Accordingly, Defendant constructively terminated Plaintiff Kelly.

311.     Defendant constructively terminated Plaintiff Kelly by refusing to assign him any shifts of work in retaliation for opting into the Lawsuit.

## XXX.  Facts Specific to Plaintiff McKnight

312.     Plaintiff McKnight has at all relevant times been an "employee" pursuant to the FLSA.

313.     Plaintiff McKnight was formerly employed by Defendant as a PPA.

314.     While employed by Defendant, Plaintiff McKnight was consistently assigned (5) or more shifts per workweek.

315.     On or around November 4, 2015, Plaintiff McKnight opted into the Lawsuit by filing his consent to become a party plaintiff under the FLSA.

316.     Defendant had actual knowledge that Plaintiff McKnight opted into the Lawsuit.

317.    Shortly after opting into the Lawsuit, Defendant ceased assigning Plaintiff McKnight any shifts to work.

318.    Plaintiff McKnight asked Defendant to assign him shifts to work, but these requests were denied expressly or were ignored.

319.    Accordingly, Defendant constructively terminated Plaintiff McKnight.

320.    Defendant constructively terminated Plaintiff McKnight by refusing to assign him any shifts of work in retaliation for opting into the Lawsuit.

**XXXI. Facts Specific to Plaintiff Morel**

321.    Plaintiff Morel has at all relevant times been an "employee" pursuant to the FLSA.

322.    Plaintiff Morel was formerly employed by Defendant as a PPA.

323.    While employed by Defendant, Plaintiff Morel was consistently assigned (5) or more shifts per workweek.

324.    On or around November 11, 2015, Plaintiff Morel opted into the Lawsuit by filing his consent to become a party plaintiff under the FLSA.

325.    Defendant had actual knowledge that Plaintiff Morel opted into the Lawsuit.

326.    Shortly after opting into the Lawsuit, Defendant ceased assigning Plaintiff Morel any shifts to work.

327.    Plaintiff Morel asked Defendant to assign him shifts to work, but these requests were denied expressly or were ignored.

328.    Accordingly, Defendant constructively terminated Plaintiff Morel.

329.    Defendant constructively terminated Plaintiff Morel by refusing to assign him any shifts of work in retaliation for opting into the Lawsuit.

**XXXII.    Facts Specific to Plaintiff Morgan**

31

330.   Plaintiff Morgan has at all relevant times been an "employee" pursuant to the FLSA.

331.   Plaintiff Morgan was formerly employed by Defendant as a PPA.

332.   While employed by Defendant, Plaintiff Morgan was consistently assigned (5) or more shifts per workweek.

333.   On or around October 26, 2015, Plaintiff Morgan opted into the Lawsuit by filing his consent to become a party plaintiff under the FLSA.

334.   Defendant had actual knowledge that Plaintiff Morgan opted into the Lawsuit.

335.   Shortly after opting into the Lawsuit, Defendant ceased assigning Plaintiff Morgan any shifts to work.

336.   Plaintiff Morgan asked Defendant to assign him shifts to work, but these requests were denied expressly or were ignored.

337.   Accordingly, Defendant constructively terminated Plaintiff Morgan.

338.   Defendant constructively terminated Plaintiff Morgan by refusing to assign him any shifts of work in retaliation for opting into the Lawsuit

### XXXIII.   Facts Specific to Plaintiff Muhammed

339.   Plaintiff Muhammed has at all relevant times been an "employee" pursuant to the FLSA.

340.   Plaintiff Muhammed was formerly employed by Defendant as a PPA.

341.   While employed by Defendant, Plaintiff Muhammed was consistently assigned (5) or more shifts per workweek.

342.   On or around November 24, 2015, Plaintiff Muhammed's opted into the Lawsuit by filing his consent to become a party plaintiff under the FLSA.

343. Defendant had actual knowledge that Plaintiff Muhammed opted into the Lawsuit.

344. Shortly after opting into the Lawsuit, Defendant ceased assigning Plaintiff Muhammed any shifts to work.

345. Plaintiff Muhammed asked Defendant to assign him shifts to work, but these requests were denied expressly or were ignored.

346. Accordingly, Defendant constructively terminated Plaintiff Muhammed.

347. Defendant constructively terminated Plaintiff Muhammed by refusing to assign him any shifts of work in retaliation for opting into the Lawsuit.

**XXXIV. Facts Specific to Plaintiff Neil**

348. Plaintiff Neil has at all relevant times been an "employee" pursuant to the FLSA.

349. Plaintiff Neil was formerly employed by Defendant as a PPA.

350. While employed by Defendant, Plaintiff Neil was consistently assigned (5) or more shifts per workweek.

351. On or around October 4, 2016, Plaintiff Neil opted into the Lawsuit by filing his consent to become a party plaintiff under the FLSA.

352. Defendant had actual knowledge that Plaintiff Neil opted into the Lawsuit.

353. Shortly after opting into the Lawsuit, Defendant ceased assigning Plaintiff Neil any shifts to work.

354. Plaintiff Neil asked Defendant to assign him shifts to work, but these requests were denied expressly or were ignored.

355. Accordingly, Defendant constructively terminated Plaintiff Neil.

356. Defendant constructively terminated Plaintiff Neil by refusing to assign him any shifts of work in retaliation for opting into the Lawsuit.

**XXXV.    Facts Specific to Plaintiff Numa**

357.    Plaintiff Numa has at all relevant times been an "employee" pursuant to the FLSA.

358.    Plaintiff Numa was formerly employed by Defendant as a PPA.

359.    While employed by Defendant, Plaintiff Numa was consistently assigned (5) or more shifts per workweek.

360.    On or around July 7, 2016, Plaintiff Numa opted into the Lawsuit by filing his consent to become a party plaintiff under the FLSA.

361.    Defendant had actual knowledge that Plaintiff Numa opted into the Lawsuit.

362.    Shortly after opting into the Lawsuit, Defendant ceased assigning Plaintiff Numa any shifts to work.

363.    Plaintiff Numa requested more shifts to work from Defendant, but these requests were ignored and denied.

364.    Defendant reduced Plaintiff Numa's allotted shifts reduced in retaliation for opting into the Lawsuit.

365.    As a result of the retaliatory reduction in shifts, Plaintiff Numa could not sustain himself and resigned his position to seek employment elsewhere.

366.    Accordingly, Defendant constructively terminated Plaintiff Numa.

**XXXVI.    Facts Specific to Plaintiff Perez**

367.    Plaintiff Perez has at all relevant times been an "employee" pursuant to the FLSA.

368.    Plaintiff Perez was formerly employed by Defendant as a PPA.

369.    While employed by Defendant, Plaintiff Perez was consistently assigned (5) or more shifts per workweek.

370.    On or around November 20, 2015, Plaintiff Perez opted into the Lawsuit by filing his consent to become a party plaintiff under the FLSA.

371.    Defendant had actual knowledge that Plaintiff Perez opted into the Lawsuit.

372.    Shortly after opting into the Lawsuit, Defendant ceased assigning Plaintiff Perez any shifts to work.

373.    Plaintiff Perez asked Defendant to assign him shifts to work, but these requests were denied expressly or were ignored.

374.    Accordingly, Defendant constructively terminated Plaintiff Perez.

375.    Defendant constructively terminated Plaintiff Perez by refusing to assign him any shifts of work in retaliation for opting into the Lawsuit.

**XXXVII.    Facts Specific to Plaintiff Phifer**

376.    Plaintiff Phifer has at all relevant times been an "employee" pursuant to the FLSA.

377.    Plaintiff Phifer was formerly employed by Defendant as a PPA.

378.    While employed by Defendant, Plaintiff Phifer was consistently assigned (5) or more shifts per workweek.

379.    On or around November 04, 2015, Plaintiff Phifer opted into the Lawsuit by filing his consent to become a party plaintiff under the FLSA.

380.    Defendant had actual knowledge that Plaintiff Phifer opted into the Lawsuit.

381.    Shortly after opting into the Lawsuit, Defendant ceased assigning Plaintiff Phifer any shifts to work.

382.    On one occasion, Mr. Cabrera threatened Plaintiff Phifer's life by stating that if he opts into the Lawsuit and the PPA Lawsuits he would be killed.

383.     Plaintiff Phifer asked Defendant to assign him shifts to work, but these requests were denied expressly or were ignored.

384.     Accordingly, Defendant constructively terminated Plaintiff Phifer.

385.     Defendant constructively terminated Plaintiff Phifer by refusing to assign him any shifts of work in retaliation for opting into the Lawsuit.

**XXXVIII. Facts Specific to Plaintiff Rasullah**

386.     Plaintiff Rasullah has at all relevant times been an "employee" pursuant to the FLSA.

387.     Plaintiff Rasullah was employed by Defendant as a PPA.

388.     While employed by Defendant, Plaintiff Rasullah was consistently assigned (5) or more shifts per workweek.

389.     On or around October 30, 2015, Plaintiff Rasullah opted into the Lawsuit by filing his consent to become a party plaintiff under the FLSA.

390.     Defendant had actual knowledge that Plaintiff Rasullah opted into the Lawsuit.

391.     Shortly after opting into the Lawsuit, Plaintiff Rasullah's weekly allotted shifts were reduced.

392.     Plaintiff Rasullah requested more shifts to work from Defendant, but these requests were ignored and denied.

393.     Defendant reduced Plaintiff Rasullah's allotted shifts reduced in retaliation for opting into the Lawsuit.

**XXXIX.   Facts Specific to Plaintiff Smaw**

394.     Plaintiff Smaw has at all relevant times been an "employee" pursuant to the FLSA.

395.     Plaintiff Smaw was formerly employed by Defendant as a PPA.

396.     While employed by Defendant, Plaintiff Smaw was consistently assigned (5) or more shifts per workweek.

397.     On or around October 30, 2015, Plaintiff Smaw opted into the Lawsuit by filing his consent to become a party plaintiff under the FLSA.

398.     Defendant had actual knowledge that Plaintiff Smaw opted into the Lawsuit.

399.     Shortly after opting into the Lawsuit, Defendant ceased assigning Plaintiff Smaw any shifts to work.

400.     Plaintiff Smaw asked Defendant to assign him shifts to work, but these requests were denied expressly or were ignored.

401.     Accordingly, Defendant constructively terminated Plaintiff Smaw.

402.     Defendant constructively terminated Plaintiff Smaw by refusing to assign him any shifts of work in retaliation for opting into the Lawsuit.

**XL.     Facts Specific to Plaintiff Spence**

403.     Plaintiff Spence has at all relevant times been an "employee" pursuant to the FLSA.

404.     Plaintiff Spence was formerly employed by Defendant as a PPA.

405.     While employed by Defendant, Plaintiff Spence was consistently assigned (5) or more shifts per workweek.

406.     On or around November 9, 2015, Plaintiff Spence opted into the Lawsuit by filing his consent to become a party plaintiff under the FLSA.

407.     Defendant had actual knowledge that Plaintiff Spence opted into the Lawsuit.

408.     Shortly after opting into the Lawsuit, Defendant ceased assigning Plaintiff Spence any shifts to work.

409.     Plaintiff Spence asked Defendant to assign him shifts to work, but these requests were denied expressly or were ignored.

410.     Accordingly, Defendant constructively terminated Plaintiff Spence.

411.     Defendant constructively terminated Plaintiff Spence by refusing to assign him any shifts of work in retaliation for opting into the Lawsuit.

**XLI.   Facts Specific to Plaintiff Taylor**

412.     Plaintiff Taylor has at all relevant times been an "employee" pursuant to the FLSA.

413.     Plaintiff Taylor was formerly employed by Defendant as a PPA.

414.     While employed by Defendant, Plaintiff Taylor was consistently assigned (5) or more shifts per workweek.

415.     On or around June 28, 2016, Plaintiff Taylor opted into the Lawsuit by filing his consent to become a party plaintiff under the FLSA.

416.     Defendant had actual knowledge that Plaintiff Taylor opted into the Lawsuit.

417.     Shortly after opting into the Lawsuit, Defendant ceased assigning Plaintiff Taylor any shifts to work.

418.     Plaintiff Taylor asked Defendant to assign him shifts to work, but these requests were denied expressly or were ignored.

419.     Accordingly, Defendant constructively terminated Plaintiff Taylor.

420.     Defendant constructively terminated Plaintiff Taylor by refusing to assign him any shifts of work in retaliation for opting into the Lawsuit.

**XLII.  Facts Specific to Plaintiff Wilson**

421.     Plaintiff Wilson has at all relevant times been an "employee" pursuant to the FLSA.

422.     Plaintiff Wilson was formerly employed by Defendant as a PPA.

423.    While employed by Defendant, Plaintiff Wilson was consistently assigned (5) or more shifts per workweek.

424.    On or around November 2, 2015, Plaintiff Wilson opted into the Lawsuit by filing his consent to become a party plaintiff under the FLSA.

425.    Defendant had actual knowledge that Plaintiff Wilson opted into the Lawsuit.

426.    Shortly after opting into the Lawsuit, Defendant ceased assigning Plaintiff Wilson any shifts to work.

427.    Plaintiff Wilson asked Defendant to assign him shifts to work, but these requests were denied expressly or were ignored.

428.    Accordingly, Defendant constructively terminated Plaintiff Wilson.

429.    Defendant constructively terminated Plaintiff Wilson by refusing to assign him any shifts of work in retaliation for opting into the Lawsuit.

### XLIII.    Facts Specific to Plaintiff Wint

430.    Plaintiff Wint has at all relevant times been an "employee" pursuant to the FLSA.

431.    Plaintiff Wint was employed by Defendant as a PPA.

432.    While employed by Defendant, Plaintiff Wint was consistently assigned (5) or more shifts per workweek.

433.    On or around November 6, 2015, Plaintiff Wint opted into the Lawsuit by filing his consent to become a party plaintiff under the FLSA.

434.    Defendant had actual knowledge that Plaintiff Wint opted into the Lawsuit.

435.    Shortly after opting into the Lawsuit, Plaintiff Wint's weekly allotted shifts were reduced.

436.    Plaintiff Wint requested more shifts to work from Defendant, but these requests were ignored and denied.

437.    Defendant reduced Plaintiff Wint's allotted shifts reduced in retaliation for opting into the Lawsuit.

## CAUSE(S) OF ACTION

### CAUSE OF ACTION FOR A VIOLATION OF
### The Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*

438.    Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

439.    Plaintiffs engaged in a protected activity by participating in the Lawsuit as named and opt-in plaintiffs.

440.    The Lawsuit alleged that Defendant violated the FLSA by, among other things, willfully failing to pay Plaintiffs the overtime premium for all hours worked in excess of forty (40) hours per workweek.

441.    In direct retaliation for Plaintiffs engaging in protected activity, Defendant reduced Plaintiffs' shifts and/or terminated them.

442.    Defendant's conduct was in violation of the Fair Labor Standards Act, as amended 29 U.S.C. §§ 201 *et seq.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendant as follows:

A.    Preliminary and permanent injunctions against Defendant and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert

with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

B.      A judgment declaring that the practices complained of herein are unlawful and in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*

C.      All damages which Plaintiffs have sustained as a result of Defendant's conduct, including back pay, liquidated damages, general and special damages for lost compensation and job benefits they would have received but for Defendant's improper practices;

D.      Awarding Plaintiffs pre-judgment interest at the highest level rate, from and after the date of service of the initial complaint in this action on all unpaid wages from the date such wages were earned and due;

E.      Awarding Plaintiffs Defendant's share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;

F.      Awarding Plaintiffs for the amount of unpaid wages, including interest thereon, and penalties, including liquidated damages subject to proof;

G.      Awarding Plaintiffs their costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs;

H.      Pre-judgment and post-judgment interest, as provided by law;

I.      Fully reinstating all Plaintiffs; and

J.      Granting Plaintiffs other and further relief as this Court finds necessary and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by this complaint and to determine liability and damages.

Dated:  February 14, 2018
        Garden City, New York

                                        Respectfully submitted,


                                        *s/James Vagnini*
                                        James Vagnini, Esq.
                                        Robert J. Valli, Jr., Esq.
                                        Sara Wyn Kane, Esq.
                                        Matthew L. Berman, Esq.
                                        **Valli Kane & Vagnini LLP**
                                        600 Old Country Road, Suite 519
                                        Garden City, New York 11530
                                        (516) 203-7180 (phone)
                                        (516) 706-0248 (fax)

                                        **ATTORNEYS FOR PLAINTIFFS**