UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

MICHAEL SAPIA, *et al.*,

               Plaintiffs,

     - against -

HOME BOX OFFICE, INC.,

           Defendant.

-------------------------------------------------------- x

Case 1:18-cv-01317 (CM)

**MEMORANDUM OF LAW
IN SUPPORT OF
MOTION TO DISMISS
AMENDED COMPLAINT**

DAVIS WRIGHT TREMAINE LLP

1251 Avenue of the Americas
21st Floor
New York, New York  10020
+1 (212) 489-8230
*Attorneys for Defendant
Home Box Office, Inc.*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................... 1

FACTS ALLEGED IN THE AMENDED COMPLAINT ........................................................ 3

ARGUMENT ................................................................................................................... 5

    A.    The Applicable Motion to Dismiss Standard ........................................................ 6

    B.    The Amended Complaint Fails to Plead That HBO Retaliated Against Plaintiffs ...................................................................................................................... 7

    C.    The Amended Complaint Fails to Plead That HBO Is, or Was, Plaintiffs' Employer ..................................................................................................................... 11

            *1.    Plaintiffs Fail to Allege That HBO is a Joint Employer or Single Enterprise with the Production Companies That Directly Employed Them* ................................................................................................................ 12

            *2.    Plaintiffs Fail to Allege That Parking Coordinators Are HBO Employees For Whose Conduct HBO Should Be Liable* ......................... 15

CONCLUSION .................................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).................................6, 8, 15

*Basak v. New York State Dept. of Health*,
  9 F. Supp. 3d 383 (S.D.N.Y. 2014) ........................................................................6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)...........................6, 15, 16

*Brown v. Coach Stores, Inc.*,
  163 F.3d 706 (2d Cir.1998)......................................................................................7

*Carr v. N. Shore-Long Island Jewish Health Sys.*,
  Index No. 14-CV-3257, 2015 WL 4603389 (E.D.N.Y. July 30, 2015)....................7

*DeJesus v. HF Management Svcs., LLC*,
  726 F.3d 85 (2d Cir. 2013).....................................................................................14

*DeSilva v. North Shore-Long Island Jewish Health Sys.*,
  770 F.Supp.2d 497 (E.D.N.Y.2011) .......................................................................14

*Fermin, et.al., v. Home Box Office, Inc., et.al.* .................................................... *passim*

*Henry v. N.Y.C. Health & Hosp. Corp.*,
  18 F. Supp. 3d 396 (S.D.N.Y. 2014).................................................................8, 10

*Itakura v. Primavera Galleries, Inc.*,
  Index No. 08-cv-9027, 2009 WL 1873530 (S.D.N.Y. June 30, 2009)....................6

*Johnson v. Rowley*,
  569 F.3d 40 (2d Cir. 2009).......................................................................................6

*Juarez v. 449 Rest., Inc.*,
  29 F. Supp. 3d 363 (S.D.N.Y. 2014).....................................................................12

*Kassman v. KPMG LLP*,
  925 F. Supp. 2d 453 (S.D.N.Y. 2013)....................................................................15

*Lopez v. Acme Am. Envtl. Co.*,
  Index No. 12-cv-511, 2012 WL 6062501 (S.D.N.Y. Dec. 6, 2012)......................13

*Lundy v. Catholic Health Sys. of L.I. Inc.*,
  711 F.3d 106 (2d Cir. 2013).....................................................................................9

*Mangiafico v. Blumenthal*,
  471 F. 3d 391 (2d Cir. 2006)....................................................................................10

*Matson v. Bd. Of Educ.*,
  631 F.3d 57 (2d Cir. 2017)........................................................................................8

*Sampson v. Medisys Health Network, Inc.*,
  Index No. 10-cv-1342, 2012 WL 3027838 (E.D.N.Y. Jul. 24, 2012) ...............12, 13

*Twombly v. Bell Atl. Corp.*,
  425 F.3d 99 (2d Cir. 2005)........................................................................................6

*Walz v. 44&X Inc.*,
  Index No. 12-cv-5800, 2012 LEXIS 161382 (S.D.N.Y. Nov. 7, 2012) .................6, 9

*Wang v. Palmisano*,
  51 F.Supp.3d 521 (S.D.N.Y. 2014) ........................................................................7, 8

*Wolman v. Catholic Health System of Long Island*,
  853 F. Supp. 2d 290 (E.D.N.Y. 2012) ....................................................................13

**Rules**

Fed. R. Civ. P. 8(a) ....................................................................................................11

Fed. R. Civ. P. 8(a)(2)................................................................................................16

Fed. R. Civ. P. 12(b)(6)...........................................................................................1, 6

## PRELIMINARY STATEMENT

Defendant Home Box Office, Inc. ("HBO" or "Defendant") submits this memorandum of law in support of its motion pursuant to Fed. R. Civ. P. 12(b)(6) for an order dismissing the amended complaint (the "Amended Complaint").  Despite having the deficiencies in the original complaint outlined for them during the initial conference, Plaintiffs have completely failed to meet their burden to adequately plead facts to plausibly state claims for alleged retaliation *against HBO*, as opposed to any other company involved in motion picture or television production, or television distribution.  The Amended Complaint is rife with hyperbole, wholly irrelevant material, and conclusory assertions that merely parrot the legal standard.  But nowhere in its 512 paragraphs and 52 pages does it contain the necessary degree of specificity to allege retaliation, nor does it plead facts tying any allegedly retaliatory conduct to HBO, as opposed to any of the numerous other companies which produce or distribute motion pictures and/or television programming for which Plaintiffs provided PPA services. The Amended Complaint is a transparent attempt to create smoke where there is no fire, and it should be dismissed.

Plaintiffs in this case are 42 Parking Production Assistants ("PPAs" and collectively, "Plaintiffs") who have performed the incidental service of reserving street parking for various production companies and their vendors (*e.g.*, for catering, equipment and wardrobe trucks) when productions film on location in New York City. PPAs park their vehicles on the street in advance of the shoot, reserving spaces. PPAs are employed by the production companies and, according to the Amended Complaint, they are hired and assigned work exclusively by Parking Coordinators. PPAs and Parking Coordinators provide services to many different production companies, which, in turn, produce motion pictures and television programs for many different studios for distribution in theaters and/or via many different television services. Parking

1

Coordinators essentially serve as staffing agencies, locating and hiring PPAs to provide services for the production companies.

Despite that there is no direct relationship between HBO and PPAs, Plaintiffs seek to hold HBO liable for the alleged retaliatory acts of Parking Coordinators. More specifically, according to the Amended Complaint, HBO retaliated against Plaintiffs by reducing their hours of work as PPAs, or by failing to re-engage them for subsequent productions, because Plaintiffs had participated in a series of prior lawsuits alleging certain unlawful pay practices within the motion picture and television production industry. These lawsuits named as defendants a number of companies in this industry that were alleged to have used the services of PPAs, including but not limited to NBCUniversal, Sony Pictures, Warner Bros., and Fox Entertainment Group. HBO was a defendant in one of those lawsuits for only a moment before the plaintiffs in that case voluntarily dismissed the claims against it, and substituted as defendants in HBO's place the two production companies that actually employed the PPAs. Yet, Plaintiffs now attempt once more to ensnare HBO in litigation, despite that the Amended Complaint is devoid of allegations that HBO directly employed PPAs, and fails to plead plausibly that HBO is liable for any retaliatory actions of the Parking Coordinators.

Although Plaintiffs were put on notice of these fatal deficiencies in their original complaint, the Amended Complaint still does not satisfy their pleading obligations. First, the Amended Complaint does not identify the dates on which each of (or even *any* of) the 42 Plaintiffs sought subsequent employment or the available opportunities they sought, which is required to plead retaliation. Second, conceding that Plaintiffs are not employed directly by HBO (but rather by production companies), the Amended Complaint attempts, but fails, to set forth facts sufficient to plead joint employer or single enterprise status. Among other things, the Amended Complaint does not identify *any* entity alleged to be co-employing Plaintiffs – *i.e.*, any

2

production company for which Plaintiffs sought to provide services. It also provides insufficient facts to support Plaintiffs' bald legal conclusion that Parking Coordinators – the only individuals Plaintiffs accuse of retaliation – were HBO employees, and does not identify the dates on which Parking Coordinators allegedly were employed by HBO, as opposed to the many other companies for which they allegedly provided services.

### FACTS ALLEGED IN THE AMENDED COMPLAINT

Plaintiffs are Parking Production Assistants ("PPAs") whose job duties included "reserving parking spots, using their personal vehicles, for Defendant's television and/or movie production scenes and production vehicles." Amended Complaint ("Am. Cplt."), ¶ 2. In and around 2015, Plaintiffs participated in a dozen lawsuits (the "PPA Lawsuits") in which PPAs "challenged the pay practices of virtually all of the major film and television networks who utilize PPAs in … the New York metropolitan area." Am. Cplt., ¶ 3. Only one of those 12 lawsuits named HBO as a defendant, and even there, the plaintiffs effectively conceded that HBO was not their employer when they subsequently dropped HBO from that case (*Fermin, et.al., v. Home Box Office, Inc., et.al.* (the "*Fermin* Lawsuit")) and substituted instead the two companies which actually produced the two HBO Original Series that were the subject of the allegations in that complaint.[1] Am. Cplt., ¶¶ 3, 51, 78.

The gravamen of the Amended Complaint is the allegation that HBO, through the Parking Coordinators, "engaged in a systematic retaliation scheme against PPAs who participated in" the PPA Lawsuits. Am. Cplt., ¶ 81. Specifically, the Amended Complaint alleges – with a notable lack of factual specificity – that HBO "retaliated against Plaintiffs by reducing the number of shifts they were assigned each workweek and, with respect to certain Plaintiffs, constructively terminating them by refusing to assign them any shifts at all." Am. Cplt. ¶ 87.

---

[1] 15-cv-07941, Docket Doc. No. 73; *see also* Am. Cplt., ¶ 51.

This is notwithstanding the fact that, while providing services to production companies, PPAs were "continually rotating from one production to the next," and were "employed on multiple productions, simultaneously and/or consecutively, for multiple employers, including Defendant." Am. Cplt. ¶ 18.

In their effort to impute liability specifically to HBO, as opposed to any or all of the other "major film and television networks who utilize PPAs" (Am. Cplt., ¶ 3), and despite that HBO did not directly employ PPAs, Plaintiffs plead allegations which appear to be intended to support two alternative theories of liability. First, Plaintiffs allege that HBO employed them "through" various unidentified production companies with which HBO was allegedly a single enterprise or joint employer of PPAs. Am. Cplt., ¶ 14. Second, Plaintiffs allege that HBO employed "Parking Coordinators," who in turn were responsible for hiring and scheduling PPAs. Am. Cplt., ¶¶ 29, 55-56, 59, 77. PPAs received work "*exclusively*" through "Parking Coordinators, without a formal hiring process" (Am. Cplt. ¶ 56), and work was doled out to PPAs by Parking Coordinators "via telephone or text message" (Am. Cplt. ¶ 58). The Amended Complaint alleges that, like PPAs, Parking Coordinators provided services to a number of different production companies at any given time (Am. Cplt., ¶¶ 93-94), and that, due to the "unlawful retaliatory practices of certain influential Parking Coordinators," it became "common practice in the industry to freeze out PPAs who participate in litigation against their employers." Am. Cplt., ¶ 93.

Only one Parking Coordinator – Maurice Cabrera ("Cabrera") – is specifically identified in the Amended Complaint.[2]  *See, e.g.*, Am. Cplt., ¶ 29.  The Amended Complaint alleges that HBO was just one of several "major production companies" to which he provided services.  Am.

---

[2]  The Amended Complaint also alleges that certain PPA Supervisors who reported to Parking Coordinators "spoke to Plaintiffs directly to ask them if they were 'involved'" in the PPA Lawsuits.  Am. Cplt., ¶ 84; see also ¶¶ 152, 162.

Cplt., ¶ 94.  According to Cabrera's LinkedIn profile, he provided services as a Parking Coordinator to a variety of different companies and studios, including NBC, CBS, 20th Century Fox and Warner Bros.  Am. Cplt. ¶ 28; Affirmation of Lyle S. Zuckerman ("Zuckerman Aff."), Exhibit A.

In support of Plaintiffs' claims of retaliation, the Amended Complaint recounts comments allegedly made by Cabrera and others expressing displeasure at Plaintiffs' participation in *all* the PPA Lawsuits – not the *Fermin* Lawsuit specifically.  Allegedly, these Parking Coordinators were able to engage in "rampant retaliation" by virtue of having "broad discretion on what PPAs to hire and to retain." Am. Cplt. ¶¶ 59, 95. Plaintiffs accuse only Parking Coordinators and their subordinates of engaging in the alleged retaliatory conduct. *See, e.g.*, Am. Cplt., ¶¶ 103 ("Mr. Cabrera stated that PPAs who participated in the Lawsuit and the PPA Lawsuits were to receive less shifts"), 104 ("He also stated the Lawsuit and the PPA Lawsuits were 'getting out of hand'"), 120 ("Mr. Cabrera informed Plaintiff C. Pellott that he was no longer getting shifts because of his participation in the Lawsuit and PPA Lawsuits"); *see also* Am. Cplt., ¶¶ 132, 142, 152, 162, 217, 219 (all attributing comments to Cabrera and PPA Supervisors concerning certain Plaintiffs' involvement in the "PPA Lawsuits").  No individual directly employed by HBO is accused of wrongdoing, and no company with which HBO allegedly jointly employed Cabrera or any other Parking Coordinator is identified.

## ARGUMENT

Plaintiffs' 512-paragraph, 55-page Amended Complaint is remarkably devoid of the sort of specific factual details which would nudge their claims of retaliation into the realm of plausibility.  The Amended Complaint digresses into matters such as the contents of parking restriction notices and local press coverage of film shoots in Hastings-on-Hudson (*see* Am. Cplt. ¶¶ 41-45), but does not provide nearly the same level of specificity when it comes to the alleged

retaliation.  Indeed, the Amended Complaint fails to identify a single instance in which any of the Plaintiffs applied for work with HBO – or even for work on a production which was subsequently distributed by HBO – and were denied that work under circumstances giving rise to an inference that HBO retaliated against them.  All of these deficiencies were identified and discussed at the initial conference with the Court, and enough is enough.  The Amended Complaint should be dismissed with prejudice.

A.      The Applicable Motion to Dismiss Standard

A complaint is appropriately dismissed for failure to state a claim pursuant to Rule 12(b)(6) if it fails to allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Johnson v. Rowley*, 569 F.3d 40, 43-44 (2d Cir. 2009), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "Bald assertions and legal conclusions, or legal conclusions masquerading as facts need not be accepted as true by the Court." *Itakura v. Primavera Galleries, Inc.*, Index No. 08-cv-9027, 2009 WL 1873530, at *4 (S.D.N.Y. June 30, 2009), *citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and pleadings that "are no more than conclusions . . . are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 678-79. The plaintiff must provide facts sufficient to allow the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly v. Bell Atl. Corp.,* 425 F.3d 99, 107 (2d Cir. 2005). Finally, to meet the *Iqbal* pleading standard, the plaintiff "must allege facts that allow the court in substance to infer elements of a *prima facie* case." *Basak v. New York State Dept. of Health*, 9 F. Supp. 3d 383, 390-91 (S.D.N.Y. 2014) (internal citations omitted).

B.      The Amended Complaint Fails to Plead That HBO Retaliated Against Plaintiffs

Thirty-six of the 42 Plaintiffs claim that HBO, through the Parking Coordinators, failed

to rehire them after they opted into the *Fermin* Lawsuit. Yet they fail to allege sufficient facts to

state a plausible claim for relief. To properly plead a claim of retaliation under the FLSA and the

NYLL, the plaintiff must allege "1) participation in protected activity known to the defendant,

like the filing of an FLSA lawsuit; 2) an employment action disadvantaging the plaintiff; and 3) a

causal connection between the protected activity and the adverse employment action." *Walz v.

44&X Inc.*, Index No. 12-cv-5800, 2012 LEXIS 161382, at *12 (S.D.N.Y. Nov. 7, 2012). The

Amended Complaint fails to do so.

With respect to the third and fourth prongs, *each* Plaintiff must identify, at the very least,

a *specific instance* in which he or she applied for work and was denied that work under

circumstances that give rise to an inference of retaliation. *Wang v. Palmisano*, 51 F.Supp.3d 521

(S.D.N.Y. 2014) (dismissing FLSA retaliatory failure to hire claim on pre-answer motion where

plaintiff failed to allege specific information concerning his applications for an open position);

*Brown v. Coach Stores, Inc.,* 163 F.3d 706, 710 (2d Cir.1998) (affirming dismissal of a failure to

hire claim because the plaintiff did not allege specific positions for which she applied and was

rejected); *Carr v. N. Shore-Long Island Jewish Health Sys.*, Index No. 14-CV-3257, 2015 WL

4603389, at *3 (E.D.N.Y. July 30, 2015) (an "essential element of a failure to hire claim is that a

plaintiff allege that she applied for a specific position and was rejected").

For each of the 36 Plaintiffs who claim they were not rehired, the Amended Complaint

recites, identically, that "on numerous occasions," they "applied for employment as a PPA

through Defendant's informal application process, but these requests were expressly denied or

were ignored." Am. Cplt., ¶¶ 111, 125, 135, 145, 155, 164, 176, 187, 199, 209, 220, 229, 246,

264, 273, 282, 300, 309, 317, 327, 336, 347, 357, 366, 375, 384, 393, 402, 411, 420, 439, 449,

7

466, 475, 484, 493. The only reference to the timing of the alleged retaliation is Plaintiffs' claim

that the unlawful conduct occurred "during the pendency of the [*Fermin*] Lawsuit" (Am. Cplt.,

¶ 81), and, for most of the Plaintiffs, "shortly after opting into the [*Fermin*] Lawsuit." Am. Cplt.,

¶¶ 143, 185, 197, 207, 281, 227, 244, 254, 262, 271, 290, 298, 307, 325, 334, 343, 355, 364, 382,

391, 400, 409, 418, 427, 437, 446, 456, 464, 473, 482, 491, 500. Moreover, not a single Plaintiff

identifies any particular available work opportunity for which he or she applied unsuccessfully –

*i.e.*, any particular production/program distributed by HBO that was in need of PPA services.

 In the absence of such allegations, Plaintiffs utterly fail to allege that they suffered any

adverse employment action at the hands of HBO. Their "failure to rehire" claim is the epitome of

"an unadorned, the-defendant-unlawfully-harmed-me accusation" insufficient to set forth a claim

of retaliation. *Matson v. Bd. Of Educ.*, 631 F.3d 57, 63 (2d Cir. 2017), quoting *Iqbal*, 129 S.Ct. at

1949.

 On this point, the *Wang* decision, 51 F.Supp.3d 521, is instructive.  There, as here, the

plaintiff alleged that the defendant retaliated against him by failing to rehire him after he filed a

lawsuit under federal and state wage payment laws. The *Wang* court dismissed the plaintiff's

retaliation claim, explaining that:

> although Plaintiff has alleged the dates on which he filed his
> complaints, *he has not alleged the dates on which Defendants
> rejected his applications, or even the dates on which he submitted
> his applications.  Instead, the Complaint merely alleges that
> Defendants rejected his job applications 'after' he filed his
> complaints*.  The Complaint's vague allegations therefore fail to
> give rise to a plausible inference that Defendants rejected him in
> retaliation for filing his FLSA claims.

51 F. Supp. 3d at 541, *citing Henry v. N.Y.C. Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 412

(S.D.N.Y. 2014) (emphasis added). Similarly here, not a single allegation concerning any of the

36 Plaintiffs who claim that HBO failed to rehire them identifies the dates on which any of them

submitted applications for subsequent employment; instead, the Amended Complaint simply

asserts generically that Parking Coordinators deprived them of unspecified work opportunities "shortly after" they engaged in protected activity.  This fundamentally fails to meet the requisite pleading standard.

Five of the remaining six Plaintiffs allege that their hours were reduced in retaliation for engaging in protected activity.  *See* Am. Cplt., ¶¶ 254 (Blackwood), 290 (Dhanasar), 429 (Numa), 456 (Rasullah), 500 (Wint). Here too, however, the Amended Complaint is devoid of specifics about that alleged reduction in work hours.

Courts in this Circuit require that plaintiffs who allege that their employer failed to pay overtime wages must, at a minimum, "identify a single workweek in which they worked at least 40 hours and also worked uncompensated time in excess of 40 hours." *Lundy v. Catholic Health Sys. of L.I. Inc.*, 711 F.3d 106, 114 (2d Cir. 2013); *Walz,* 2012 LEXIS 161382, at *12 (granting motion to dismiss FLSA overtime claim because the plaintiffs did not provide "an estimate of how often they worked overtime or for how many hours, nor do they provide the time frame for when these unpaid hours were earned"). Similarly here, in order to adequately plead a claim of retaliation under the FLSA and/or NYLL for an alleged reduction in working hours, Plaintiffs must, at least, identify a specific workweek in which they sought more hours of available work on an HBO production than they were assigned under circumstances that give rise to an inference of retaliatory animus. Not *one* of these five Plaintiffs has identified even one specific week in which that allegedly occurred, and thus, they have failed to allege an adverse employment action.

Finally, one Plaintiff, Conrado Bent, does not even allege that he applied for subsequent employment at *any* time after he engaged in protected activity, impliedly conceding that he was not subject to an adverse employment action under circumstances giving rise to an inference of retaliation.  Am. Cplt. ¶¶ 236-38.

9

Each of the pleading omissions described above is particularly glaring given how crucial it is to assessing the viability of the claims in this particular case.  As the Amended Complaint notes, PPAs are "continually rotating from one production to the next," providing services to "multiple employers over the course of any given period of time." Am. Cplt. ¶18. In order to adequately plead a retaliation claim, each Plaintiff must plead that he or she was actively seeking employment[3] and applied for a position *with HBO*, as opposed to a position with any one of the other alleged "multiple employers". *See Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 412 (S.D.N.Y. 2014) (dismissing claim of retaliation that "fails to state with even a modicum of specificity when the relevant events occurred. Such conclusory allegations are simply too vague in nature and non-specific as to time... to serve as a basis for her retaliation claims." (internal citations omitted)).

Without information concerning the specifics of the alleged retaliatory acts, HBO lacks a basis upon which to evaluate certain of its other defenses, too. For example, as Plaintiffs acknowledge in paragraph 50 of the Amended Complaint, the parties (and others) entered into a settlement agreement resolving the PPA Lawsuits (including the *Fermin* Lawsuit), pursuant to which Plaintiffs released all federal and state wage-related claims (including those asserted here) against HBO and any production company financed by HBO which produced or co-produced any HBO Original Programming production concerning events prior to October 1, 2016. Am.

---

[3] For example, the Amended Complaint alleges that Plaintiff Carol Forrest "was injured from a slip and fall incident" in 2015. Am. Cplt. 316. According to a verified complaint filed in connection with that incident (of which the Court can take judicial notice as a publicly filed document – *see Mangiafico v. Blumenthal*, 471 F. 3d 391, 398 (2d Cir. 2006)), as of January 24, 2015, Forrest was "confined to her bed and/or home for a great length of time" and "unable to pursue her usual vocation and activities; *and upon information and belief she [would] in the future be unable to fully perform her usual vocation and activities*." Thus, it seems implausible that she was looking for work as a PPA during the relevant time period.  For the Court's ease of reference, Forrest's verified complaint is attached as Exhibit B to the Zuckerman Aff.

Cplt., ¶¶ 50-51; 15-cv-07941, Docket Doc. No. 180-1.[4] Without information concerning the dates on which Plaintiffs allegedly sought subsequent employment, HBO is unable to determine whether Plaintiffs have already released the claims they purport to assert here (although it plainly appears that most, if not all, have done so, given that the retaliation allegedly occurred "during the pendency of the [*Fermin*] Lawsuit" and, in virtually every case, "shortly after" the Plaintiffs opted into that action). Am. Cplt., ¶¶ 143, 185, 197, 207, 281, 227, 244, 254, 262, 271, 290, 298, 307, 325, 334, 343, 355, 364, 382, 391, 400, 409, 418, 427, 437, 446, 456, 464, 473, 482, 491, 500. This defies the pleading requirement set forth in Fed. R. Civ. P. 8(a), which is designed to ensure that the defendant has a fair understanding of what the plaintiff is complaining about, and whether there is a legal basis for recovery.[5]  Purposefully vague pleading cannot circumvent the reality that Plaintiffs have no legal basis for recovery against HBO if their claims were previously released.

For these reasons, the Amended Complaint should be dismissed with prejudice.

C.      The Amended Complaint Fails to Plead That HBO Is, or Was, Plaintiffs' Employer

Plaintiffs seek to impute liability to HBO for alleged retaliation by Parking Coordinators via two amorphous and incongruent lines of pleading:  first, that HBO is a joint employer or single enterprise with Plaintiffs' direct employers (the various unidentified production companies that directly employed PPAs); and, second, that HBO employs the Parking Coordinators who controlled Plaintiffs' employment.  Neither line of reasoning is sufficiently plead to withstand dismissal.

---

[4] Relevant portions of the settlement agreement are attached as Exhibit C to the Zuckerman Aff.

[5] The Court has already identified joinder as an issue in this case, and the Amended Complaint does nothing to demonstrate how allowing these 42 Plaintiffs to proceed in a single action serves the interests of judicial economy.  Indeed, if the Amended Complaint is not dismissed, this case will devolve into 42 mini-trials regarding each Plaintiff's individual allegations of retaliation.

1.    *Plaintiffs Fail to Allege That HBO is a Joint Employer or Single Enterprise with the Production Companies That Directly Employed Them*

The Amended Complaint purports to impute liability to HBO under single enterprise and/or joint employer theories in combination with the various production companies under its alleged control. However, the Amended Complaint fails to identify any of those production companies. It also fails to identify the time periods during which any particular Plaintiff worked for any of those purported joint employers, and where each of them worked (*i.e.*, which production they were working on). On the contrary, Plaintiffs allege that they "continually rotated from one production to the next," seeking to secure work "for one project while another is between shoots," and thus, they "tend[ed] to work for multiple employers over the course of any given period of time." Am. Cplt. ¶ 17. These allegations underscore the point that the Amended Complaint fails to allege that HBO (as opposed to any of the other companies that engaged the PPAs) is responsible for any alleged retaliatory conduct against any of the 42 Plaintiffs.  The Amended Complaint is silent as to just when, if ever, any of the 42 Plaintiffs worked for or applied to work for *any* specific production company that is purportedly a joint employer or single enterprise with HBO.

We are not aware of any case, in any federal court, where a plaintiff proceeded with an employment lawsuit against one entity without even identifying the other alleged joint employer(s) – or entities that together, with the named defendant, comprise the alleged single enterprise.  This is not surprising:  without identifying the purported joint employer or other member(s) of a single enterprise, it is not possible for Plaintiffs to allege facts sufficient to plausibly plead that a common employment relationship exists.

For example, to establish a single enterprise under the FLSA, Plaintiffs must plead and prove that HBO had interrelated operations, centralized control of labor relations, common management, and common ownership or financial control with another entity. *Juarez v. 449*

12

*Rest., Inc.*, 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014) (collecting cases). There are no such allegations in the Amended Complaint, nor could there be, because Plaintiffs do not identify any entity with which HBO allegedly had this relationship. The Amended Complaint is similarly devoid of allegations that HBO was a joint employer with one or more other entities, and thus should be dismissed on this basis, too. *Sampson v. Medisys Health Network, Inc.*, Index No. 10-cv-1342, 2012 WL 3027838, at *4 (E.D.N.Y. Jul. 24, 2012) (dismissing FLSA complaint where "[t]he facts alleged may suggest some kind of affiliation among the defendants, but the Court does not believe that they are sufficient to allege a joint employer relationship"). Specific facts, not mere conclusory allegations of "operational involvement and control," are required. *Id.* at *4 (allegation that "defendants engage in a joint venture of operational control for providing healthcare services" was conclusory and did not save joint employer claim from dismissal).

Plaintiffs' scattershot references to documentation allegedly common to all productions distributed by HBO (Am. Cplt., ¶ 26), HBO identification badges (*id.*, ¶ 27), gifts of HBO clothing (*id.*, ¶ 28), and other miscellany are insufficient to plead an employment relationship and stave off dismissal. These are perhaps indicia of "common purpose," but they "do not touch on the central issue: whether [HBO] exercised sufficient control over Plaintiffs to be considered their joint employers under the FLSA." *Wolman v. Catholic Health System of Long Island*, 853 F. Supp. 2d 290, 298 (E.D.N.Y. 2012).  Such allegations are insufficient to support the legal conclusion that HBO may be held liable under either a single enterprise or joint employer theory.  *Lopez v. Acme Am. Envtl. Co.*, No. 12-cv-511, 2012 WL 6062501, at *4 (S.D.N.Y. Dec. 6, 2012) ("Allegations of common ownership and common purpose, without more, do not answer the fundamental question of whether each corporate entity controlled Plaintiffs as employees.").  This is because, even if HBO and the various unnamed production companies referenced in the Amended Complaint were part of an "integrated enterprise," HBO and

13

the production companies "may nevertheless employ separate people and, absent control, are not liable for the separate employees of joint ventures." *Lopez*, 2012 WL 6062501, at *4. The allegations of the Amended Complaint state that HBO and the various production companies *surrendered* that necessary degree of control to the Parking Coordinators. See Am. Cplt., ¶¶ 59 ("Parking Coordinators had broad discretion on what PPAs to hire and to retain"), 95 (Parking Coordinators had "broad discretion to hire and fire PPAs").

Beyond the insufficient allegations of a joint employment or single enterprise employment relationship, the Amended Complaint also fails to allege any employment relationship between Plaintiffs on the one hand, and either HBO or any production company on the other hand. Courts in this Circuit require FLSA plaintiffs to "[state] where the plaintiffs worked, outline their positions, and provide their dates of employment" to properly plead an employment relationship. *DeJesus v. HF Management Svcs.*, LLC, 726 F.3d 85 (2d Cir. 2013); *DeSilva v. North Shore-Long Island Jewish Health Sys.*, 770 F.Supp.2d 497, 508 (E.D.N.Y.2011) (requiring plaintiffs to amend FLSA complaint to state where the named plaintiffs worked, positions held, and their dates of employment, or face dismissal). The Amended Complaint does not meet this standard, because it fails to allege *which* of the unidentified production companies supposedly is a joint employer with HBO, or *where* or *when* those production companies actually employed any of the Plaintiffs.

And, once again, the Amended Complaint leaves HBO without a fair understanding of whether there is a legal basis for recovery against it. Among other things, HBO is unable to accurately identify the legitimate, non-retaliatory reasons for any alleged failure to engage Plaintiffs (or to engage them for fewer hours) without first knowing the specific production company that each Plaintiff alleges was his or her employer at the time of each alleged retaliatory act, and the specific production involved. For example, the *Fermin* Lawsuit identified

14

the production companies responsible for the HBO Original Series "Girls" and "Vinyl" as

Plaintiffs' employers. To the extent Plaintiffs now allege that those two production companies

ceased using them due to retaliatory animus, that argument will be conclusively rebutted by the

fact that neither program was in production any longer during the relevant time frame.

> 2.  *Plaintiffs Fail to Allege That Parking Coordinators Are HBO Employees For Whose Conduct HBO Should Be Liable*

The Amended Complaint similarly fails to plead adequately that the Parking

Coordinators – who are the only alleged link between HBO and Plaintiffs, *and* who are the only

individuals who allegedly engaged in retaliatory conduct – are employees of HBO. Plaintiffs

baldly allege that HBO "employed" Parking Coordinators, but that is nothing more than a legal

conclusion which may not assumed to be true. *Iqbal*, 556 U.S. at 678. The sole factual allegation

offered by the Amended Complaint in support of this assertion is a claim that Cabrera "displayed

on his 'LinkedIn page' that he was a parking coordinator for 'HBO.'" Am. Cplt. ¶ 28. In fact,

Cabrera's LinkedIn profile reflects that he has provided Parking Coordinator services to no fewer

than seven different companies, including NBC, CBS, 20th Century Fox and Warner Bros.

Zuckerman Aff., Exhibit A. Indeed, Plaintiffs allege that "[i]t is common practice in the

production industry for different production companies to employ the same Parking Coordinators

that their competitors employ… For example, Mr. Cabrera was employed as a Parking

Coordinator by Defendant and also by certain other major production companies." Am. Cplt.

¶¶ 93-94. Thus, just like Plaintiffs themselves, the Parking Coordinators allegedly worked for

multiple entities at times relevant to this action.  Yet, the Amended Complaint does not allege

when the Parking Coordinators worked on productions that were to be distributed by HBO, as

distinguished from when they worked on productions for other media companies.

This pleading deficiency is compounded by Plaintiffs' failure to identify when they were

retaliated against (*i.e.*, when they applied for work) and for what position, because, solely based

on the number of media companies for which Cabrera worked as a Parking Coordinator, it is likely that he was acting as the agent of other entities not affiliated with HBO when he allegedly retaliated against Plaintiffs. The Amended Complaint contains no allegations that would "nudge across the line from conceivable to plausible" the proposition that the Parking Coordinators were acting on behalf of HBO (rather than any one of the many other studios for which they were providing services) when they allegedly retaliated against Plaintiffs. *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 461 (S.D.N.Y. 2013), *quoting Twombly*, 550 U.S. at 570.

## CONCLUSION

Unless a complaint alleges specific facts about the conduct of the defendant which give rise to liability, the defendant lacks fair notice of the claims against it. "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Twombly*, 550 U.S. at 556, n.3, 127 S.Ct. 1955. Here, Plaintiffs offer nothing more that "naked assertion[s] devoid of further factual enhancement," together with a narrative about the industry generally, without facts plausibly alleging that HBO is responsible for any alleged retaliation. Characterized charitably, the Amended Complaint complains about retaliation committed at unspecified times, by the denial to Plaintiffs of unidentified available hours of work, in a conspiracy with alleged unidentified joint employers, and committed by individuals unconnected to HBO.  Notwithstanding that it contains 512 numbered paragraphs, the Amended Complaint is notably lacking in each of these essential allegations, and, therefore, it fails to state a claim upon which relief can be granted.

For the foregoing reasons, Home Box Office, Inc. respectfully submits that Plaintiffs'

Amended Complaint must be dismissed in its entirety.


Dated: New York, New York.              Respectfully submitted,
      June 11, 2018

                                           DAVIS WRIGHT TREMAINE LLP


                                           By: *   /s/*
                                             Laura Sack
                                             Lyle S. Zuckerman

                                           1251 Avenue of the Americas
                                           21st Floor
                                           New York, New York  10020
                                           +1 (212) 603-6498
                                           *Attorneys for Defendant*
                                           *Home Box Office, Inc.*