UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
MICHAEL SAPIA, *et al.*,

                Plaintiffs,

     - against -

HOME BOX OFFICE, INC.,

                Defendant.
-------------------------------------------------------------- x

Case 1:18-cv-01317 (CM)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION TO DISMISS <u>AMENDED COMPLAINT</u>**

DAVIS WRIGHT TREMAINE LLP

1251 Avenue of the Americas, 21st Floor
New York, New York  10020-1104
(212) 489-8230 Phone
(212) 489-8340 Fax
*Attorneys for Defendant*
*Home Box Office, Inc.*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

I.      Plaintiffs Have Already Released Their Retaliation Claims................................................ 2

II.     Plaintiffs Failed to Identify the Dates on which They Sought Employment
with HBO ............................................................................................................................ 4

III.    Plaintiffs failed to Adequately Plead That they were Denied Working
Opportunities On HBO Productions .................................................................................... 6

        A.      The Opposition provides nothing of substance concerning Cabrera's
alleged employee status ........................................................................................... 7

        B.      Cabrera – not HBO – exercised oversight and control over PPAs ......................... 8

CONCLUSION ............................................................................................................................ 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Beebe v. New York Times Co.*,
   666 F. Supp. 2d 321 (E.D.N.Y. 2009) ...................................................................................5

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ...............................................................................................................8

*Jones v. Capital Cities/ABC Inc.*,
   168 F.R.D. 477 (S.D.N.Y.1996) ..........................................................................................10

*Mauro v. S. New England Telecomms. Inc.*,
   208 F.3d 384 (2d Cir. 2000) ..................................................................................................6

*Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v.*
   *Morgan Stanley Inv. Mgmt. Inc.*,
   712 F.3d 705 (2d Cir. 2013) ..................................................................................................5

*Wang v. Phoenix Satellite Television US, Inc.*,
   976 F. Supp. 2d 527 (S.D.N.Y. 2013) ...................................................................................6

*Wolman v. Catholic Health Sys. of L.I.*,
   853 F. Supp. 2d 290 (E.D.N.Y. 2012) ...................................................................................9

**State Cases**

*Allen v. Riese Organization, Inc.*,
   106 A.D.3d 514 (1st Dep't. 2013) .........................................................................................3

**PRELIMINARY STATEMENT**

The first and most fundamental requirement for any complaint – emphasized by the Supreme Court in the *Twombly/Iqbal* decisions – is that it must plead sufficient *facts* to plausibly state a claim. At the very least, there must be sufficient factual allegations to allow the Court to assess preliminary questions such as whether joinder is proper, and to find that there is a sufficient basis to force the defendant to incur the substantial expense and inconvenience of discovery. Plaintiffs here have woefully failed to meet that threshold burden.

As discussed at the April 30, 2018 preliminary conference (the "Preliminary Conference"), Plaintiffs' original 442-paragraph Complaint did not allege sufficient facts to state a claim against HBO, nor did it contain sufficient detail for the Court to conclude that joinder of claims alleged by the 42 individual plaintiffs is proper. For example, the Complaint did not plead the dates on which Plaintiffs allegedly sought but were denied work by HBO, nor did it identify *a single production* on which *any* Plaintiff allegedly sought work. Plaintiffs then filed a 55-page, 512-paragraph Amended Complaint that still did not contain the specific factual allegations necessary to adequately state a claim of retaliation against HBO (but added a NYLL retaliation claim). After HBO's Motion to Dismiss pointed out that the fatal flaws continued in the Amended Complaint, Plaintiffs for the first time argued in their Opposition Brief (the "Opposition" or "Opp.") that they need only satisfy an outdated and inapplicable version of Rule 8's "notice pleading" standard, and that pleading deficiencies can be cured by discovery. But Plaintiffs have it exactly backwards: they must plausibly state a claim *before* they are entitled to discovery. Plaintiffs' pleading failures also helpfully demonstrate why the pleading requirements exist in the first place. Here, the pleading failures, in combination, render HBO virtually unable to analyze the claims asserted against it or determine which of many available defenses are applicable. The time has come for the Court to dismiss this case in its entirety.

**ARGUMENT**

The Opposition highlights why this case must be dismissed. Initially, the Opposition incorrectly states that the *Fermin* lawsuit was filed on October 8, 2016, rather than October 8, 2015 (the date on which it was actually filed). This egregious one-year misstatement confirms that any retaliation Plaintiffs suffered "shortly after" engaging in protected activity has been released by the *Fermin* settlement agreement.

In the unlikely event that *any* of Plaintiffs' claims are not encompassed by the *Fermin* release, they must be dismissed for the separate and independent reason that their entire foundation rests on impermissible leaps of logic, not allegations of fact. According to the Amended Complaint, Parking Coordinators (specifically, Cabrera) assigned Plaintiffs to provide PPA services for any number of content producers filming on location in New York (including, for example, CBS, NBCUniversal, Sony Pictures and Fox Entertainment Group). Parking Coordinators and their subordinates – not HBO – allegedly retaliated against Plaintiffs by reducing their *aggregate* work providing PPA services to producers *throughout the industry*. According to Plaintiffs, they "provided work for *someone*, and the Amended Complaint pleads facts that point to the *Defendant* as their employer (or that Defendant is, at least, *one* of the entities which jointly employed Plaintiffs)." Opp. at 2. What is missing are *any* factual allegations that any Plaintiff was denied a single work opportunity on a single HBO production. The conclusory assertions in the Amended Complaint are simply too thin a reed on which to sustain a claim against HBO.

**I.     PLAINTIFFS HAVE ALREADY RELEASED THEIR RETALIATION CLAIMS**

The dates on which Plaintiffs allegedly were retaliated against should be literally at their fingertips, in the phones by which they claim to have received and requested PPA work. Am. Cplt. ¶¶ 58, 61. Yet, that information is nowhere to be found in the Amended Complaint. By

failing to plead the dates on which they sought work – despite having been advised to do so at the Preliminary Conference – Plaintiffs apparently seek to avoid the inconvenient fact that their retaliation claims are barred by their prior release of those claims because the alleged adverse employment actions occurred *before* the effective date of the *Fermin* release.

Plaintiffs claim in the Opposition that "[a] mere glance at the Lawsuit's settlement agreement reveals that it only releases Plaintiffs' FLSA and NYLL claims up until October 1, 2016 – approximately seven (7) days before the [*Fermin*] Lawsuit commenced." Opp. at 23. This false and misleading statement to the Court is borderline sanctionable: the *Fermin* lawsuit was filed on October 8, 2015, *not* 2016. Am. Cplt. ¶ 78. The *Fermin* settlement released all known and unknown claims under the FLSA and NYLL that accrued up to and including October 1, 2016 – a year *after* the *Fermin* lawsuit was filed. Because "a valid release constitutes a complete bar to an action on a claim which is the subject of the release," *Allen v. Riese Organization, Inc.*, 106 A.D.3d 514, 516 (1st Dep't. 2013) (internal quotations omitted), the alleged retaliatory conduct had to occur *after* October 1, 2016 to avoid the preclusive effect of the release contained in the *Fermin* settlement agreement. The Amended Complaint contains no factual allegations suggesting this is so, and the Opposition merely reinforces that any retaliation that Plaintiffs claim to have suffered appears to have occurred *prior to* October 1, 2016.

For example, the Amended Complaint alleges as follows with regard to the first five Plaintiffs to this action:

- Michael Sapia engaged in protected activity on February 10, 2016 (Am. Cplt. ¶ 99) and in April 2016 (Am. Cplt. ¶¶ 102-08) – respectively, eight and six months prior to the October 1, 2016 release date in the *Fermin* settlement agreement.

- Christian Pellot engaged in protected activity on October 8, 2015 (Am. Cplt. ¶ 117) – almost a full year prior to the October 1, 2016 release date.

- Neftali Pellot engaged in protected activity on November 11, 2015 (Am. Cplt. ¶ 130) – eleven months prior to the October 1, 2016 release date.

3

- Ranier Delgadillo engaged in protected activity on October 30, 2015 (Am. Cplt. ¶ 140) – more than eleven months prior to the October 1, 2016 release date.

- John Carusi engaged in protected activity on November 9, 2015 (Am. Cplt. ¶ 150) – almost exactly eleven months prior to the October 1, 2016 release date.

The Opposition then argues that it is sufficient for the Amended Complaint to allege that these and other Plaintiffs engaged in protected activity, and "that their shifts were cut *shortly thereafter.*" Opp. at 10 (emphasis supplied).[1] But even if Plaintiffs were correct that they need not plead more specifically, the plain meaning of the allegation that Plaintiffs were denied work "shortly after" their protected activity indicates that they were retaliated against before October 1, 2016. The *Fermin* release therefore bars them from pursuing these claims.

## II.   PLAINTIFFS FAILED TO IDENTIFY THE DATES ON WHICH THEY SOUGHT EMPLOYMENT WITH HBO

Another fatal defect in the original Complaint identified during the Preliminary Conference was its failure to allege the dates when Plaintiffs allegedly sought work opportunities with HBO. Presumably, this information is readily available to Plaintiffs, as they claim that "the informal hiring process was conducted via telephone or text message." Am. Cplt. ¶ 58. And yet, just like its predecessor, the Amended Complaint is devoid of any such allegations, and the Opposition offers no explanation or justification for their absence.

Plaintiffs argue in the Opposition that they properly pleaded that they sought PPA work with HBO. Opp. at 11. That is incorrect. The Amended Complaint pleads that Plaintiffs "applied for employment as a PPA through Defendant's informal application process," but, as explained earlier in the Amended Complaint (and as acknowledged at page 5 of the Opposition), this is an *industry-wide* process that services numerous companies and studios throughout the motion

---

[1] *See, e.g.*, Am. Cplt. ¶ 101, 109 (Sapia); 119 (C. Pellot); 133 (N. Pellott); 143 (Delgadillo); 153 (Carusi); *see also, e.g.*, Am. Cplt. ¶¶ 143, 185, 197, 207, 218, 227, 244, 262, 271.

4

picture and television production industry.[2] The Amended Complaint does not plead that *any* of the 42 Plaintiffs specifically applied for work on *any* production which was subsequently distributed by HBO – nor does it even provide any date on which Plaintiffs sought PPA work *in general* after they engaged in protected conduct (or to whom they directed their applications). Plaintiffs' failure to include that information is especially telling in light of the fact that the dates on which Plaintiffs allegedly requested work through "the informal hiring process … via telephone and text message" (*Id.*, ¶ 58) are in the call logs and message history of their smart phones.  Plaintiffs themselves are the keepers of this information.  It is both disingenuous and unhelpful to curing their pleading defects for them to argue that these and similar questions should be addressed in the course of discovery. *See, e.g.*, Opp. at 2. *See Pension Benefit Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 723 (2d Cir. 2013) (concluding that the plaintiffs' "imprecise pleading is particularly inappropriate... where the plaintiffs necessarily ha[d] access, without discovery, to... specific information from which to fashion a suitable complaint").[3]

Also unavailing is Plaintiffs' argument that they are not required to provide these details. "Excusal from the specific application requirement depends upon the context and a realistic assessment of reasonableness under the circumstances." *Beebe v. New York Times Co.*, 666 F.

---

[2] *See* Am. Cplt. ¶¶ 18 (PPAs "are continually rotating from one production to the next, and tend to be employed by multiple productions, working to secure locations for one project while another is between shoots, or working on productions sequentially as they become available… PPAs were generally employed on multiple productions, simultaneously and/or consecutively, for multiple employers"), 59 ("Parking Coordinators had broad discretion on what PPAs to hire and to retain"), and 93 ("It is common practice in the production industry for different production companies to employ the same Parking Coordinators that their competitors employ").

[3] The bare bones pleading also deprives the Court of sufficient information to conclude that joinder is proper.  The only plausible conclusion from the Amended Complaint's description of the informal application process is that each of the 42 individual plaintiffs worked or applied to work on different productions, for different companies or studios, at different times.  Joinder of all of their claims, therefore, is wholly inappropriate.

Supp. 2d 321, 334 (E.D.N.Y. 2009) (collecting cases). Not only do the circumstances here militate against relieving Plaintiffs of this obligation, but the cases cited in the Opposition illustrate that, even where a job opening is not advertised, a plaintiff still must demonstrate that he or she actually sought employment in a position or class of positions through the informal means available to him or her. In *Wang v. Phoenix Satellite Television US, Inc.* (cited in Opp. at 10), for example, the plaintiff provided far more details about her participation in the defendant's informal application process than Plaintiffs do here. There, the plaintiff sought subsequent employment with that particular host employer by contacting the named individual responsible for hiring decisions, in response to which that individual invited the plaintiff to a rendezvous in Atlantic City instead of soliciting a formal employment application. 976 F. Supp. 2d 527, 539 (S.D.N.Y. 2013). *See also Mauro v. S. New England Telecomms. Inc.*, 208 F.3d 384, 387 (2d Cir. 2000) ("In this case, the record suggests that Mauro clearly indicated his interest in a promotion to a Level Two position…") (cited in Opp. at 11). There is no such specificity alleged with respect to *any* of the 42 Plaintiffs here. Plaintiffs do not allege that they made *any* effort at *any* particular time to secure work on *any* specific production which was hiring PPAs; instead, they point to an amorphous, industry-wide process by which they allegedly sought work with any of a number of entities that utilize PPAs. Accordingly, the Amended Complaint fails to plausibly plead a retaliation claim against HBO.

### III.   PLAINTIFFS FAILED TO ADEQUATELY PLEAD THAT THEY WERE DENIED WORKING OPPORTUNITIES ON HBO PRODUCTIONS

In the *Fermin* case, plaintiffs alleged that they had provided PPA services on the HBO Original Series "Girls" and "Vinyl" – and named those programs in their complaint. In this case, Plaintiffs identify not a single production distributed by HBO on which they sought work. If Plaintiffs had been deprived of work opportunities on "Girls," "Vinyl" or any other HBO

6

program because they had participated in the *Fermin* lawsuit, they were obligated to include that information in the Amended Complaint, but they have not. Thus, even assuming for purposes of this motion that Cabrera reduced or denied PPA work to Plaintiffs, the Amended Complaint fails to allege facts which support a reasonable inference that HBO is liable for that conduct.

> **A.   The Opposition provides nothing of substance concerning Cabrera's alleged employee status**

In a futile attempt to conflate Cabrera with HBO, the Amended Complaint refers to "Defendant" with respect to allegations which concern only Cabrera and PPA Supervisors. Then in the Opposition (without citation to *any* legal authority), Plaintiffs argue that, because Cabrera concededly was an employee of CBS, he must *likewise* be an employee of HBO. Opp. at 21. But there is nothing to support this naked fallacy: Cabrera's complaint against CBS contains no allegations regarding HBO. What is more, in sharp contrast to the "broad discretion" allegedly afforded Cabrera by the producers of programming distributed by HBO (Am. Cplt. ¶ 95), the plaintiffs in the *Cabrera* action allege that they were forced *by CBS* (not HBO) to deny work opportunities to certain PPAs. Accordingly, Cabrera's allegations in that case not only avail Plaintiffs nothing in this one, but also *contradict* Plaintiffs' allegations that HBO is responsible for any retaliation they allegedly suffered.

The Amended Complaint and the documents it references (including the *Cabrera* pleadings and Cabrera's LinkedIn profile) demonstrate that Cabrera was providing services as a Parking Coordinator to a number of studios during the relevant time period (including as a very busy employee of CBS, for which he claims to have worked well in excess of 50-60 hours per week). Plaintiffs identify Cabrera and the PPA Supervisors as the *only* sources of any alleged retaliatory comments. *See, e.g.,* Opp. at 9-10 (summarizing Cabrera's alleged comments to Sapia). Those comments were *not* specifically attributed to HBO, the *Fermin* litigation, or HBO

7

programming, but more broadly concerned "the Lawsuit and PPA Lawsuits" (*see* HBO's Moving Memorandum at 5). Plaintiffs' conclusory assertion that Cabrera was an employee of HBO retaliating on behalf of HBO is precisely the type of "formulaic recitation of the elements of a cause of action" rejected in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### B.   Cabrera – not HBO – exercised oversight and control over PPAs

Plaintiffs seek to impute liability to HBO based on alleged industry-wide practices, without alleging any specific facts tying the specific claims in this action to HBO. The futility of this tactic was laid bare at the Preliminary Conference, when Plaintiffs' counsel was advised that far more specificity was required to avoid dismissal of the case. Yet, the Amended Complaint, like its predecessor, contains *no* factual allegation of retaliation specific to HBO – or to any program which subsequently was distributed by HBO. Setting aside the conclusory allegations, the Amended Complaint fails to set forth how Cabrera's alleged reduction or elimination of Plaintiffs' working opportunities may be attributed *to HBO* – as opposed to any of the many other companies and studios in the motion picture and television production industry for which Cabrera and the PPAs allegedly worked. On these points, the Opposition offers *nothing* to rebut HBO's arguments in support of its motion to dismiss. *See* HBO's Moving Memorandum at 15-16.

Plaintiffs argue that, "even if the Parking Coordinators were not Defendant's employees, Defendant, as Plaintiffs' joint-employer, is liable for their retaliatory actions." Opp. at 21; *see also id.* at 22.  Plaintiffs provide no citation to support this proposition, and for good reason: if true, it would eliminate the need for the joint employer or single enterprise test. Under Plaintiffs' flawed theory, any business that uses a staffing agency would be *automatically* liable, jointly and severally, for the conduct of that staffing agency. This is not the law.  The Opposition also fails to identify *how* the Court could apply the joint employer or single enterprise test without

8

Plaintiffs having identified the primary employer – another fatal flaw of the Amended Complaint.

According to the Amended Complaint, Cabrera had previously assigned PPA work to Plaintiffs; only some of that work was on productions distributed by HBO; and Cabrera stopped assigning work to Plaintiffs (or reduced their shifts) after they engaged in protected activity. These allegations are insufficient to support the inference that *HBO* retaliated against them, because the Amended Complaint also fails to allege in any non-conclusory fashion that HBO exerted *any* control over the terms and conditions of Plaintiffs' work as PPAs. *Wolman v. Catholic Health Sys. of L.I.*, 853 F.Supp.2d 290, 298 (E.D.N.Y. 2012) (conclusory allegations of joint employer or single integrated enterprise insufficient to withstand motion to dismiss (collecting cases)). To the contrary, the discretion that HBO allegedly afforded Cabrera leads to the reasonable inference that his alleged actions may *not* be attributed to HBO. According to the Amended Complaint, Cabrera "had broad discretion on what PPAs to hire and to retain," and it was precisely this discretion that allegedly "permitted such rampant retaliation." Am. Cplt. ¶ 95. It was also Cabrera and other Parking Coordinators who had the discretion to hire and retain PPAs, decided where to assign PPAs, and coordinated PPA services for a variety of different companies and studios – including those producing programming distributed by studios and networks other than HBO. Am. Cplt. ¶¶ 59, 64, 93. These alleged facts do not give rise to a reasonable inference of retaliation *by HBO*.

Plaintiffs invoke discovery as a panacea for their failure to allege specific facts, presumably in the hope of identifying some production that subsequently was distributed by HBO on which they might have worked, had Cabrera allegedly not curtailed their work opportunities. Discovery is not intended, however, to enable a party to go on a "fishing

expedition" for sufficient facts to state a claim for relief. "[T]he purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim exists, and a defendant has a right ... to challenge the legal sufficiency of the complaint's allegations against him, without first subjecting himself to discovery procedures." *Jones v. Capital Cities/ABC Inc.*, 168 F.R.D. 477, 480 (S.D.N.Y.1996) (internal quotations omitted). Because the Amended Complaint fails to plausibly allege that HBO may be responsible for any wrongs Plaintiffs allegedly suffered at the hands of Cabrera and other Parking Coordinators, they are not entitled to discovery, and the Amended Complaint should be dismissed.

## **CONCLUSION**

Having failed to plead in the Amended Complaint any of the specific information they were advised during the Preliminary Conference to include, Plaintiffs now contend that they nevertheless have satisfied their "notice pleading" obligations. In so doing, Plaintiffs have squandered their opportunity to add additional factual allegations sufficient to plausibly assert retaliation claims against HBO, presumably because those details (which, if they exist, are unquestionably available to Plaintiffs) are fatal to their claims. Even if some of their claims fall outside the time frame covered by the *Fermin* release, the Court should not allow this case to go forward based on nothing more than Plaintiffs' speculative hope that discovery will cure their pleading defects. Plaintiffs' failure to identify even one production company with which any Plaintiff sought employment, identify any specific job from which any Plaintiff was denied work opportunities, or properly plead that Cabrera (or any other parking coordinator) was an employee of HBO not only fails to nudge their retaliation claims into the realm of plausible, but constitutes so egregious a lack of notice of their claims that it deprives HBO of due process.  Accordingly, the Court should dismiss the Amended Complaint in its entirety, with prejudice, and award to HBO such other and further relief as may be appropriate and just.

Dated: New York, New York
       July 13, 2018

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By:  */s/*
    Laura Sack
    Lyle Zuckerman

1251 Avenue of the Americas, 21st Floor
New York, New York 10020-1104
(212) 489-8230 Phone
(212) 489-8340 Fax
*Attorneys for Defendant*
*Home Box Office, Inc.*

11