UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x
:
MICHAEL SAPIA, *et al.*, :
:
    Plaintiffs, :
: Case 1:18-cv-01317 (CM)
 - against - :
:
HOME BOX OFFICE, INC., :
:
    Defendant. :
:
---------------------------------------------------------- x

# MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP

1251 Avenue of the Americas
21st Floor
New York, New York 10020
+1 (212) 489-8230
*Attorneys for Defendant*
*Home Box Office, Inc.*

## TABLE OF CONTENTS

                                                                                                                                 **Page**

PRELIMINARY STATEMENT ................................................................................................... 1

RELEVANT PROCEDURAL HISTORY ..................................................................................... 2

RELEVANT FACTS ..................................................................................................................... 3

ANALYSIS AND ARGUMENT ................................................................................................... 4

I.      THE SECOND AMENDED COMPLAINT FAILS TO CURE THE DEFECTS IDENTIFIED IN THE ORDER AND DOES NOT PLAUSIBLY ALLEGE RETALIATION ................................................................................................................... 4

          A.      The Deficiencies In the First Amended Complaint ............................................... 4

          B.      The Second Amended Complaint Is Deficient for Precisely the Same Reason Its Predecessor Was Dismissed by This Court ......................................... 5

          C.      The Law of the Case Compels Dismissal ............................................................... 8

II.     NEIL SHOULD BE ORDERED TO SHOW CAUSE WHY HIS CLAIMS SHOULD NOT BE DISMISSED .......................................................................................... 9

CONCLUSION ............................................................................................................................... 9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................. 7

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................. 7

*Bellezza v. Holland*,
    No. 09-CV-8434, 2011 WL 2848141 (S.D.N.Y. July 12, 2011) ......................................... 8

*Henry v. N.Y.C. Health & Hosp. Corp.*,
    18 F. Supp. 3d 396 (S.D.N.Y. 2014) ................................................................................... 6

*Lundy v. Catholic Health Sys. of L.I. Inc.*,
    711 F.3d 106 (2d Cir. 2013) ................................................................................................ 6

*N. River Ins. Co. v. Phila. Reinsurance Corp.*,
    63 F.3d 160 (2d Cir. 1995) .................................................................................................. 8

*Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand*,
    322 F.3d 147 (2d Cir. 2003) ................................................................................................ 8

*Pension Ben. Guar. Corp. ex rel. St Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013) ................................................................................................ 8

*State Farm Mut. Auto. Ins. Co. v. Mallela*,
    No. 00-CV-4923, 2002 WL 31946762 (E.D.N.Y. Nov. 21, 2002) ...................................... 9

*United States v. Plugh*,
    648 F.3d 118 (2d Cir. 2011) ................................................................................................ 8

*Wang v. Palmisano*,
    51 F. Supp. 3d 521 (S.D.N.Y. 2014) ................................................................................... 6

*Weslowski v. Zugibe*,
    96 F. Supp. 3d 308 (S.D.N.Y. 2015) ................................................................................ 8, 9

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................. 1, 2

**PRELIMINARY STATEMENT**

Plaintiffs have now had three opportunities to state a claim for retaliation against HBO. In each instance, they failed to do so. Consequently, HBO moves once again for an order dismissing their claims pursuant to Fed. R. Civ. P. 12(b)(6). More particularly, HBO seeks dismissal with prejudice of the April 9, 2019 complaint (the "*Sapia II* Complaint" or the "Second Amended Complaint") filed on behalf of 30 plaintiffs, each of whose claims were dismissed without prejudice by this Court's December 17, 2018 Decision and Order ("Order")[1] because they failed to plausibly plead that they were retaliated against after the effective date of their prior release of such claims.

In the Order, the Court stated that "it was incumbent on Plaintiffs to plead facts from which a reasonable trier of fact could conclude that HBO engaged in retaliatory conduct *after the period covered by the release*"  (Order, 14) (emphasis in original).  This was not an invitation for Plaintiffs to simply allege, in vague and conclusory fashion with no specific facts or dates, that HBO engaged in retaliatory conduct after the period covered by the release.  Yet, this is precisely what Plaintiffs have pleaded this time around, in an effort to circumvent the binding effect of the release and the Order.  The Second Amended Complaint should be dismissed with prejudice because it contains no factual allegations from which it may be reasonably inferred that HBO engaged in retaliatory conduct after the period covered by the release.

And, in light of plaintiff Curtis Neil's ("Neil") abandonment of his claims (which were the only claims to survive HBO's motion to dismiss the First Amended Complaint), the Court should enter an Order for Neil to show cause why his claims should not also be dismissed.

---

[1] For ease of reference, the Order, entered as Document No. 28 on the docket, is attached as Exhibit A to the accompanying Declaration of Lyle S. Zuckerman ("Zuckerman Dec.").

1

## RELEVANT PROCEDURAL HISTORY

The serious pleading deficiencies in Plaintiffs' initial Complaint (which was filed on February 14, 2018 on behalf of 42 Parking Production Assistants, or "PPAs") ("*Sapia I*") were discussed at length during this Court's initial conference on April 30, 2018. Thereafter, Plaintiff's counsel, Valli Kane & Vagnini ("VKV"), filed a First Amended Complaint in an unsuccessful attempt to remedy these pleading deficiencies. HBO moved to dismiss the First Amended Complaint under Fed. R. Civ. P. 12(b)(6), and that motion was granted as to all plaintiffs except Neil.

In the Order dismissing the First Amended Complaint as to 41 of the 42 plaintiffs named in *Sapia I*, this Court authorized Plaintiffs to amend the Complaint for a second time. In response, Plaintiffs should have repleaded the complaint to allege retaliation with plausibility in accordance with the guidance provided by this Court in the Order. Instead, Plaintiffs took the unorthodox and unauthorized tack of trying to circumvent the preclusive effect of this Court's Order by manufacturing the appearance of new claims. On behalf of 30 of the 41 *Sapia I* plaintiffs whose claims had been dismissed, VKV purchased a new index number (19-cv-3142) and filed a separate action captioned *Sapia v. HBO* ("*Sapia II*"), which VKV did not designate as related to *Sapia I* and which was initially assigned to Judge Engelmayer.

HBO promptly raised these matters with both Judge Engelmayer (seeking transfer of *Sapia II* to this Court because it was related to *Sapia I*) and with this Court. In response, by letter to this Court dated April 26, 2019, Plaintiffs asserted, incorrectly, that *Sapia I* and *Sapia II* are not related cases because, they claimed, "[t]he actions concern different parties" and "[t]here is little factual overlap between the cases." (Docket Doc. No. 33.) In reality, a redline comparison of the *Sapia II* Complaint – now the Second Amended Complaint – to the First Amended

Complaint reveals that the two pleadings hardly differ.[2] Zuckerman Dec., Exh. B (redline comparison of First Amended Complaint and Second Amended Complaint).

Acknowledging the obvious – that *Sapia I* and *Sapia II* shared the same parties, underlying facts and legal claims – this Court concluded that *Sapia II* properly belongs on its docket and consolidated *Sapia I* and *Sapia II*. The Court also deemed the *Sapia II* Complaint to be the (second) amended complaint in *Sapia I*. The time has come to put an end to Plaintiffs' machinations and dismiss this case in its entirety with prejudice.

## RELEVANT FACTS

Plaintiffs named in *Sapia II* (now the Second Amended Complaint) are 30 Parking Production Assistants ("PPAs") who reserve street parking for production vehicles at locations in New York City where movies and TV shows are filmed. Order, 2. According to Plaintiffs, Parking Coordinators assigned work to them through an "informal hiring process … conducted via telephone or text message." First Am. Cplt., ¶ 58; Second Am. Cplt., ¶ 60. The First and Second Amended Complaints both assert claims of retaliation under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") in connection with an identical set of operative factual circumstances. Specifically, both pleadings allege that, following the commencement of a collective action entitled *Fermin v. Home Box Office, Inc., et al.* (the "*Fermin* Action"), HBO "engaged in a systematic retaliation scheme against PPAs who participated in" the *Fermin* Action and related lawsuits. First Am. Cplt., ¶ 81; Second Am. Cplt. ¶ 84. Both pleadings allege – with a notable lack of factual specificity – that HBO retaliated against Plaintiffs by reducing the number of shifts they were assigned each workweek and, with

---

[2] In fact, Plaintiffs did not even bother in the Second Amended Complaint to cite the applicable provisions of the FLSA and the NYLL under which they are bringing suit, despite that the Court specifically called out this "serious deficiency" in the First Amended Complaint. Order, 7 n.2.

3

respect to certain Plaintiffs, terminating their employment or refusing to employ them. First Am. Cplt. ¶ 87; Second Am. Cplt. ¶ 91.

In connection with the settlement of the *Fermin* Action and a number of related lawsuits, Plaintiffs entered into a settlement agreement affirmatively releasing all claims against HBO (among other releasees) under the FLSA and NYLL accruing up to and including October 1, 2016 (the "Settlement Agreement"). (First Am. Cplt. ¶ 50; Second Am. Cplt. ¶ 51). While Plaintiffs alleged in the First Amended Complaint that they experienced adverse employment actions "shortly after" they engaged in protected activity, they pleaded nothing to suggest that any alleged adverse actions occurred after the period covered by the release. Order, 14-15.

## ANALYSIS AND ARGUMENT

### I. THE SECOND AMENDED COMPLAINT FAILS TO CURE THE DEFECTS IDENTIFIED IN THE ORDER AND DOES NOT PLAUSIBLY ALLEGE RETALIATION

#### A. The Deficiencies In the First Amended Complaint

HBO moved to dismiss the First Amended Complaint because it failed to plausibly allege retaliation. In relevant part, HBO noted that, read in the light most favorable to Plaintiffs, the allegations in the First Amended Complaint failed to support the inference (except with respect to Neil) that Plaintiffs had been discriminated against *after* the effective date of the release, and therefore, Plaintiffs' retaliation claims were barred by the Settlement Agreement.

The Court found this argument to be "fatal to Plaintiffs." Order, 14. The Court dismissed the claims of all 30 Plaintiffs (as well as the claims of eleven other plaintiffs who evidently elected not to participate in *Sapia II* and who are no longer parties to this action), noting in relevant part that the allegations in the First Amended Complaint "overwhelmingly support[] the … conclusion … that the alleged retaliation took place 'during the pendency of [the *Fermin* Action],'" *before* October 1, 2016, and were therefore barred by the Settlement

4

Agreement.  Order, 15.  The Court further found that Plaintiffs' failure to allege that they suffered retaliation after the effective date of the release in the Settlement Agreement was "particularly glaring" in light of the fact that evidence of retaliation, if it existed, was "uniquely in Plaintiffs' possession and contained on their cellphones." *Id.*, at 16.

After dismissing the claims of all the *Sapia I* plaintiffs except Neil, the Court afforded those 41 plaintiffs a third bite at the apple by granting them leave to file "a new complaint that plausibly pleads that the alleged retaliation suffered by all Plaintiffs occurred after the period covered by the Settlement Agreement." *Id.*, at 17.

### B. The Second Amended Complaint Is Deficient for Precisely the Same Reason Its Predecessor Was Dismissed by This Court

If there were any question as to whether any of the 30 Plaintiffs could plead a plausible retaliation claim under either the FLSA or the NYLL after entry of the Order, that question has now been answered resoundingly in the negative.  In the Second Amended Complaint, Plaintiffs have failed entirely to remedy the defects in the First Amended Complaint.  The Court should now dismiss the Second Amended Complaint in its entirety, with prejudice.

The Second Amended Complaint is largely identical to the First Amended Complaint. *See* Zuckerman Dec., Exh. B.  To be sure, there are slight modifications in the Second Amended Complaint, but they do not come close to curing the deficiencies identified in the Order.  Like its predecessor, the Second Amended Complaint fails to allege even *one* specific date after October 1, 2016 on which *any* of the 30 Plaintiffs sought employment or was denied employment by HBO, thereby failing to "plausibly plead that the alleged retaliation suffered by all Plaintiffs occurred after the period covered by the Settlement Agreement."  Order, 17.  All 30 Plaintiffs instead allege vaguely that they were denied employment or re-employment as a PPA "throughout 2016 and after October 1, 2016 until present," or "before and after October 1, 2016," or "in 2016 and after October 1, 2016." *See, e.g.,* Second Am. Cplt., ¶¶ 113, 127, 137,

5

147, 157, 167, 178, 189, 200, 209.  This does not satisfy the clear standard set forth in the Order dismissing the claims of all Plaintiffs except Neil from the case;[3] instead, it merely adds still more vague and conclusory allegations to a pleading already littered with them.  *See*, *Wang v. Palmisano*, 51 F. Supp. 3d 521, 541 (S.D.N.Y. 2014), *citing Henry v. N.Y.C. Health & Hosp. Corp.,* 18 F. Supp. 3d 396, 412 (S.D.N.Y. 2014).

Plaintiffs were authorized by this Court to amend the complaint to plead facts sufficient to demonstrate that an act of retaliation occurred *after* October 1, 2016.  They have failed to do so.  Instead, they have repleaded the same deficient allegations, categorized in the Order as follows:  (1) that Mr. Cabrera told some Plaintiffs that the PPA Lawsuits were "getting out of hand," and directed them to withdraw from them; (2) that PPA Supervisors issued the same directive as Mr. Cabrera; (3) that certain Plaintiffs were not assigned work after they participated in an interview with The New York Times concerning the PPA Lawsuits; and (4) that certain other Plaintiffs who had participated in the PPA Lawsuits lost working opportunities.  (Order, 5-6).  The allegations in the Second Amended Complaint are identical.  *Compare, e.g.,* First Am. Cplt., ¶¶ 102-05, 120-21, 131-32, 142 and Second Am. Cplt., ¶¶ 105-08, 123-24, 134-35, 145 (concerning Cabrera); First Am. Cplt., ¶¶ 152-53, 174, 216-18 and Second Am. Cplt., ¶¶ 155-56, 177, 216-18  (concerning PPA Supervisors); First Am. Cplt., ¶¶ 183-84, 195-96 and Second Am.

---

[3] The Court's Order dismissing the First Amended Complaint (except as to Neil) was correctly decided, undergirded by well-settled analogous precedent.  Courts in this Circuit require that plaintiffs who allege that their employer failed to pay overtime wages must, at a minimum, "identify a single workweek in which they worked at least 40 hours and also worked uncompensated time in excess of 40 hours." *Lundy v. Catholic Health Sys. of L.I. Inc.*, 711 F.3d 106, 114 (2d Cir. 2013).  In *Lundy*, the Second Circuit upheld dismissal of the plaintiffs' claims where, like here, the plaintiffs claimed in vague and conclusory fashion, *inter alia*, that they "typically" worked certain shifts; "typically" missed meal breaks; and worked uncompensated time before and after their regular shifts, "typically" resulting in an additional 15 working minutes.  Similarly here, Plaintiffs must at least identify a specific workweek in which they sought more hours of available work from HBO on a production than they were assigned, under circumstances that give rise to an inference of retaliatory animus.

Cplt., ¶¶ 186-87, 197-98 (concerning New York Times article); First Am. Cplt., ¶¶ 207-09, 227-29, 244-46 and Second Am. Cplt., ¶¶ 208-09, 228-29, 237-38 (concerning generalized claims of lost working opportunities); *see, also, generally*, Zuckerman Dec., Exh. B.  None of these four categories of generalized claims plausibly pleads that retaliation occurred after October 1, 2016 *(i.e.*, at least a year after the *Fermin* Action was filed).  *See* Order, 16 (noting that the *Fermin* Action was filed on October 8, 2015).

The gravamen of Plaintiffs' claim is that their protected activity – participating in the PPA Lawsuits – triggered retaliation by HBO.  Yet 21 of the 30 Plaintiffs opted in to the *Fermin* Action in 2015 (9-12 months prior to October 1, 2016).  Second Am. Cplt., ¶¶ 120, 133, 143, 153, 174, 184, 195, 206, 215, 235, 272, 290, 299, 319, 328, 337, 346, 355, 365, 373, 391.  The remaining nine Plaintiffs opted in between February and July 2016 (three to seven months prior to October 1, 2016).  *Id.*, ¶¶ 102, 163, 226, 244, 253, 262, 282, 308, 382.  This is precisely why Plaintiffs are required to allege specific dates after October 1, 2016 on which HBO retaliated against them.  Their failure to do so is purposeful, inexcusable, and does not meet the requirements of the Order or the pleading requirements set forth by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

As the Court noted in the Order, "the failure to plead exact dates when Plaintiffs suffered retaliation is particularly glaring given that, as pleaded in the First Amended Complaint, this information is uniquely in Plaintiffs' possession and contained on their cellphones."  Order, at 16.  That omission, glaring as it was in the First Amended Complaint, is positively blinding in the Second Amended Complaint.  To reiterate what the Court has already articulated in the Order, "[i]mprecise pleading is particularly inappropriate … where the plaintiffs necessarily have access, without discovery, to … specific information from which to fashion a suitable complaint."  *Id.*, quoting *Pension Ben. Guar. Corp. ex rel. St Vincent Catholic Med. Centers Ret.*

7

*Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 723 (2d Cir. 2013). In this respect, the lack of specificity compels only one conclusion: Plaintiffs can plead no facts in support of their conclusory allegations that each of them suffered retaliatory adverse employment actions after October 1, 2016.

### C. The Law of the Case Compels Dismissal

In light of Plaintiffs' failure to correct the "fatal" deficiency of the First Amended Complaint, the Second Amended Complaint must be dismissed with prejudice. The "law of the case" doctrine provides that a decision on an issue of law made at one stage of a litigation becomes binding precedent to be followed in subsequent states of the same litigation. *United States v. Plugh*, 648 F.3d 118, 123 (2d Cir. 2011). Accordingly, a court's prior decisions "may not usually be changed unless there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent a manifest injustice." *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand*, 322 F.3d 147, 167 (2d Cir. 2003). A court should be "loath to revisit an earlier decision in the absence of [such] extraordinary circumstances." *N. River Ins. Co. v. Phila. Reinsurance Corp.*, 63 F.3d 160, 165 (2d Cir. 1995); *Bellezza v. Holland*, No. 09-CV-8434, 2011 WL 2848141, at *3 (S.D.N.Y. July 12, 2011). There are no such extraordinary circumstances here.

The Second Amended Complaint does not contain any new factual allegations which remedy the deficiencies identified by this Court when it dismissed the First Amended Complaint. To the contrary, the Second Amended Complaint is virtually identical to the dismissed First Amended Complaint. "The mere filing of a First Amended Complaint does not entitle [a party] to relitigate [its] claims absent new factual allegations." *Weslowski v. Zugibe*, 96 F. Supp. 3d 308, 316 (S.D.N.Y. 2015) (dismissing amended complaint based on law of the case doctrine). Accordingly, the law of the case requires dismissal of the Second Amended Complaint, with

8

prejudice. *Id.*, *citing State Farm Mut. Auto. Ins. Co. v. Mallela*, No. 00-CV-4923, 2002 WL 31946762, at *8 (E.D.N.Y. Nov. 21, 2002) (applying law of the case doctrine where "plaintiff's [c]omplaint [was] very similar to [the] plaintiff's [p]rior [c]omplaint").

## II. NEIL SHOULD BE ORDERED TO SHOW CAUSE WHY HIS CLAIMS SHOULD NOT BE DISMISSED

The Court also should enter an order to show cause why the claims of Neil (the only plaintiff whose claims survived dismissal of the First Amended Complaint) should not be dismissed. HBO timely served and filed its answer to the First Amended Complaint on January 31, 2019. (Docket Doc. No. 31.) On March 8, 2019, HBO served discovery requests on Neil. Zuckerman Dec., ¶ 4. Neil has not responded to HBO's discovery requests. *Id.*, at ¶ 5. By letter dated April 26, 2019, VKV advised the Court that Neil "has not been responding to our numerous, repeated attempts at outreach in order to timely and properly respond to [HBO's] discovery demands and attend to other aspects of our representation." (Docket Doc. No. 33.) In this April 26 letter to the Court, VKV stated its intent to file a motion to withdraw as counsel for Neil "within the next week" (meaning, by May 3, 2019), due to his non-responsiveness. VKV posited that, as a result of its contemplated motion to withdraw as counsel, "at some point in the near future, it is likely that [Neil's claims would] be dismissed[.]" *Id.* To date, however, VKV has filed no such motion to withdraw.

As it appears that Neil has abandoned his prosecution of this action, HBO respectfully submits that the Court should enter an order to show cause why his claims should not be dismissed upon a finding of failure to prosecute.

## CONCLUSION

For the foregoing reasons, HBO respectfully submits that the Second Amended Complaint must be dismissed in its entirety, with prejudice; Neil should be ordered to show

9

cause why his claims should not be dismissed as well; and HBO should be awarded such other and further relief as the Court deems appropriate.

Dated: New York, New York  
      June 21, 2019

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: _/s/_____
    Laura Sack
    Lyle S. Zuckerman

1251 Avenue of the Americas
21st Floor
New York, New York  10020
(212) 603-6498
*Attorneys for Defendant*
*Home Box Office, Inc.*