UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

                                        x

MICHAEL SAPIA, et al.,

               Plaintiffs,

  -against-

HOME BOX OFFICE,

              Defendant.

                                         x

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #:_____
> DATE FILED: 3/14/2022

18 civ 1317(CM)

## MEMORANDUM DECISION AND ORDER

McMahon, J.:

      Defendant Home Box Office (HBO) has filed a motion for summary judgment dismissing the claims of the remaining plaintiffs in this action, together with spoliation sanctions and sanctions for not satisfying the Court's order of September 19, 2019. The motions are opposed.

      This case is one of those that languished for want of prosecution by counsel and consequent judicial oversight during the pandemic. It is time to get this matter back on track. Before doing that, however, it is necessary to clarify the posture of the case.

## BACKGROUND

      In 2015, a group of Parking Production Assistants ("PPAs") brought an action against HBO, alleging in sum and substance that the PPAs were entitled to be paid overtime wages by HBO. *See Fermin et al. v. Home Box Office, Inc.*, No. 15-cv-07941. The *Fermin* Action, which was assigned to my colleague The Honorable Analisa Torres, was settled by then-Magistrate Judge James Francis in September 2017. Per the terms of that settlement, all claims against HBO arising

under federal and state labor laws and belonging to the *Fermin* plaintiffs, of whatever nature, that accrued prior to October 1, 2016, were released.

At least some of the PPAs who were involved in the *Fermin* Action believed that they suffered retaliation as a result of their participation in that lawsuit, in the form of not being hired for subsequent HBO productions. Forty-two such PPAs brought this action alleging retaliation claims in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). A full description of the First Amended Complaint in this action can be found in the decision granting in part and denying in part Defendant's Motion to Dismiss that pleading. (Dkt. No. 28). Insofar as is relevant, the Court dismissed the claims of all plaintiffs except plaintiff Curtis Neil, on the ground that it was impossible to infer, from the face of the pleading, that any of the rest of the plaintiffs suffered retaliation after October 1, 2016 – the date prior to which all claims of any nature against HBO arising under the FLSA or the NYLL were released. Dismissal was without prejudice to the filing of a complaint that would cure this deficiency.

Rather than accept the invitation to file an amended complaint, the law firm representing Plaintiffs, Valli, Kane & Vagnini ("VKV"), filed an entirely new lawsuit on behalf of 30 of the original 42 plaintiffs in this action, asserting claims identical to the claims asserted in the dismissed First Amended Complaint. (No. 19-cv-3142, at Dkt. No. 1). The newly filed action was assigned to my colleague, The Honorable Paul A. Engelmayer. After this attempt at judge shopping was brought to the Court's attention by counsel for HBO, Judge Engelmayer and I agreed that the lawsuit assigned to him should be consolidated with what remained of this action (*i.e.*, the claims of Mr. Curtis Neil) and heard by the originally assigned judge (me). Consolidation was effected by order of the Court dated July 7, 2019, and the complaint in the action before Judge Engelmayer

was deemed the Second Amended Complaint ("SAC") in this action. (Dkt. No. 36). HBO's renewed effort to get the lawsuit dismissed was denied on September 19, 2019. (Dkt. No. 50).

At the conclusion of the decision denying HBO's motion to dismiss, the Court entered the following order:

> While I am denying the Defendant's Motion to Dismiss, I remain skeptical that the Plaintiffs will be able to prove their case moving forward. The District Court has "wide discretion" in handling discovery. *Soley v. Wasserman,* 639 Fed.Appx. 670, 675 (2d Cir. 2016) (quoting *Wills v. Amerada Hess Corp.,* 379 F.3d 32, 51 (2d Cir. 2004)); *see also In re Subpoena Issued to Dennis Friedman,* 350 F.3d 65, 69 (2d Cir. 2003). At this stage, Plaintiffs have alleged *barely enough* to survive this motion to dismiss. Defendants have an absolute right not to be put through expensive and unnecessary discovery procedures if Plaintiffs could have avoided this protracted process.
>
> Therefore, within 60 days of this Decision, each Plaintiff has to advise . . . Defendants [of] every instance after October 1, 2016 that s/he suffered retaliation by HBO. This includes but is not limited to: (1) dates on which s/he applied for a job as a PPA; (2) to whom the request for employment was made; (3) any individuals spoken to at HBO; (4) emails, text messages, and any other evidence of communication between the Plaintiffs and Defendant; (5) any and all response to employment requests; and (6) the dates on which those responses were sent to each Plaintiff.

(*Id.* at 8-9). In short, the Court required each Plaintiff to offer evidence tending to show that he or she could prove a prima facie case of retaliation. *See Mullins v. City of New York,* 626 F.3d 47, 53 (2d Cir. 2010) ("(1) participation in protected activity known to the defendant . . . ; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action."). I anticipated that HBO might move for summary judgment as against any plaintiff who could not come forward with enough evidence to prove a prima facie case. Although Plaintiffs have asserted at various times that discovery in this action has not commenced, that is incorrect; the Court directed Plaintiffs to provide, as discovery, the evidence they intended to use (each of them, considered individually – for this is 14 individual cases, not a single case) in order to establish a prima facie case as against HBO.

HBO answered the SAC on October 3, 2019. (Dkt. No. 52). Aside from a few matters relating to the resolution of some claims and the representation of certain Plaintiffs – all of which is described below – matters pretty much ground to a screeching halt, at least as far as this Court was concerned. The 60 days within which Plaintiffs were to provide discovery to HBO expired on November 20, 2019, but the docket reveals that HBO made no motion to compel and sought no additional discovery, at that time or at any other time. Absolutely nothing in the Court's order at Docket No. 50 barred Plaintiffs from seeking discovery, but they did not do so. I understand that Plaintiffs provided certain materials to HBO on November 18, 2019 and thereafter and, per agreement of counsel, obtained subpoenas addressed to various cell phone providers in May of 2020. (*See* Dkt. No. 63; Dkt. No. 77, ¶¶8-9). What they provided will be addressed below.

The Court heard nothing further until on or about December 11, 2020, when counsel were asked to file, and apparently did file, a letter updating the Court on the progress of the case (I note that this letter is not docketed on ECF for some reason, though Magistrate Judge Lehrburger's response thereto appears at Docket No. 64). Judge Lehrburger directed the parties to set a schedule for completion of "the current phase of discovery" (which I assume means the discovery this Court ordered back in September 2019). Judge Lehrburger also set a motion schedule, pursuant to which HBO filed the long-anticipated motion for summary judgment dismissing the claims of all of the remaining Plaintiffs – who at this point number 15 individuals (see below).[1]

---

[1] Defendant's motion seeks to dismiss 23 Plaintiffs – Andrea Barnes, Alan Bennett, Anthony Birkbeck, Winston Blackwood, Kendal Brazel, Errol Brown, Alexander Campbell, John Carusi, Dionicio Chambers, Raynier Delgadillo, Rafael Diaz, Howard Harrison, Sheriba Jackson, Miguel Morel, Garnett Morgan, Christian Pellott, Neftali Pellott, Gary Phifer, Collette Sajjad, Michael Sapia, Clinton Spence, Shamarl Wilson, and Ali Muhammed (*see* Dkt. No. 74 ("Br."), at 2 n. 3) – but for the reasons discussed below, only 15 actually remain at this stage.

**Who Is Left In This Case**

Before we can address the merits of any motion, the Court needs to clarify who is still a party in this lawsuit and who is no longer involved. This involves addressing several outstanding administrative issues.

A review of the record reveals that twenty-eight individuals who were plaintiffs on the original complaint in this action are no longer participating in this case:

1.     Twelve of the original 42 plaintiffs in this action were identified by Plaintiffs' counsel as lacking viable retaliation claims, so no claims were filed on their behalf in the SAC. That leaves 30 potential plaintiffs.

2.     *Curtis Neil:*  Mr. Neil was the only plaintiff whose case was not dismissed by the Court without prejudice in its Order Granting Defendants' Motion to Dismiss (Dkt. No.28). However, he disappeared, leading his counsel – who could not locate him – to seek leave to withdraw. That application was granted in July 2019. (Dkt. No. 47). Mr. Neil was contacted at his last known address and given until August 11, 2019, to appear by new counsel or to indicate to the Court that he intended to proceed *pro se*. Withdrawing counsel was ordered to notify Mr. Neil of this order by cell phone and priority mail to his last known address. He failed to contact the Court, and no new counsel has appeared on his behalf. The Court issued an order to show cause why his case should not be dismissed for failure to prosecute on September 20, 2019. (Dkt. No. 51). Mr. Neil has never responded to that order; he has not contacted the Court to provide us with good contact information or otherwise taken any steps to prosecute this action. His claims are, therefore, dismissed without prejudice. He is no longer a plaintiff in this lawsuit.

3.     *Devon Bailey, Frederick Diaz, Priamo Fermin, Vincent Taylor and Robert Tracey:* On January 24, 2020, these individuals filed a stipulation of dismissal of their claims without

prejudice as against Home Box Office, Inc. (Dkt. No. 55). These individuals have not refiled their claims. They are no longer plaintiffs in this lawsuit.

4.      *Ravi Dhanasar and Hameen Rashullah:* On February 19, 2020, counsel sought leave to withdraw as counsel of record for Messers. Dhanasar and Rashullah, again on the ground that the clients were not communicating with counsel (Dkt. No. 58). The Court granted the motion (Dkt. No. 59) and gave Messers. Dhanasar and Rashullah written notice, at their last known address as provided by counsel, that their claims would be dismissed without prejudice if they did not either appear by new counsel or notify the Court in writing that they intended to prosecute the case *pro se*. (Dkt. No. 60). Messers Dhanasar and Rashullah have not responded to the Court's notice and have not appeared either in person or by counsel. Their claims are, therefore, dismissed with prejudice; they are no longer plaintiffs in this lawsuit.

5.      *Ali Muhammad:* At the same time, counsel also sought leave to withdraw their representation of plaintiff Ali Muhammad. (Dkt. No. 58). The Court granted the motion and sent the same letter of notification to Mr. Ali. Unlike Messers. Dhansar and Rashullah, Mr. Muhammad indicated that he would represent himself. (Dkt. No. 62). However, Mr. Muhammad has not participated in this action since notifying the Court that he wished to represent himself, though copies of all papers and orders have been sent to his address on file with the Court.

6.      *Rafael Diaz, Errol Brown, Dionicio Chambers, Howard Harrison, Colette Sajjad, Clinton Spence, Winston Blackwood, John Carussi:* On July 2, 2021, these individuals filed a stipulation of dismissal with prejudice as against Home Box Office, Inc. (Dkt. No. 82). Their claims are, therefore, dismissed with prejudice and they are no longer plaintiffs in this lawsuit.[2]

---

[2] To the extent that this stipulation has not been so-ordered by the court, it shall be deemed so ordered, *nunc pro tunc* to the date of its filing with the court.

The following 14 individuals, all represented by VKV, remain as plaintiffs in this lawsuit: Michael Sapia, Andrea Barnes, Allan Bennett, Anthony Birkbeck, Kendal Brazel, Alexander Campbell, Raynier Delgadillo, Shierba Jackson, Miguel Morel, Garnett Morgan, Christian Pello, Neftali Pellot, Gary Phifer, and Shamarl Wilson.

As noted, Ali Muhammad is representing himself.

### The Motion for Summary Judgment

There was a method to my madness in directing that the Plaintiffs provide HBO with discovery in the specific form of the information that would be needed to make out a prima facie case of retaliation under the familiar *McDonnell Douglas* formulation[3] – information about specific instances in which they sought work from HBO and were denied that work, allegedly in retaliation for their participation in the *Fermin* Action. For this is not one lawsuit but 14 separate lawsuits that were joined together in a single complaint by a single lawyer. There are no group-side claims here; in order to prove a prima facie case of retaliation, each individual plaintiff must establish that s/he, on a specific date, sought work on an identifiable HBO production and was denied work on that production because of his/her participation in the *Fermin* Action. *See Mullins*, 626 F.3d at 53. It is not enough for any plaintiff to assert that s/he would have liked to work on HBO productions and never got the opportunity and to assert that this "must have" resulted from HBO's decision to retaliate against them for participating in the *Fermin* Action. The burden for

---

[3] FLSA retaliation claims are subject to the three-step burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Brock v. Casey Truck Sales, Inc.,* 839 F.2d 872, 876 (2d Cir.1988). "[A] plaintiff alleging retaliation under FLSA must first establish a prima facie case of retaliation by showing (1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010). "Once the plaintiff establishes a prima facie case of FLSA retaliation, the burden shifts to the defendant to articulate a 'legitimate, non-discriminatory reason for the employment action.'" *Id.* (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir.2000) (citation omitted). If the defendant meets this burden, the plaintiff must produce "sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." *Id.*

each plaintiff who is suing HBO is to identify when that plaintiff sought an opportunity to work *for HBO* and was denied that opportunity because HBO was retaliating against the plaintiff for participating in the *Fermin* Action. The Court wanted to know, at the outset of the case, whether there was any plaintiff who could not come forward with enough evidence to make out a prima facie case of retaliation.

As there has been no other discovery to date (though as noted above, nothing in my order prevented the parties from taking additional discovery – there was no stay of discovery – and a huge amount of time has passed), HBO's motion (as far as I am concerned) is limited to that issue: has each Plaintiff proffered enough evidence to meet his or her burden of going forward with a prima facie case?

HBO argues that all but one of the remaining plaintiffs have failed to provide evidence of a single instance in which they sought work either directly from HBO or from anyone associated with HBO who could have provided them with HBO work, and who were denied the work (work on an HBO production) that they sought. HBO argues that these plaintiffs have failed to meet their minimal burden to come forward with evidence that would make out a prima facie case of retaliation, which entitles defendant to summary judgment without further discovery.

Specifically, HBO explains that HBO only "tapped" certain specific Parking Coordinators to procure a team of PPAs, and only those specific people "held the power and discretion to decide whether to allocate work to PPAs." (Br. 3). HBO argues that the people Plaintiffs contacted were not in a position to provide the Plaintiffs with work on HBO productions. HBO also argues that one remaining Plaintiff who *was* in touch with someone who could have provided him with work on an HBO production – Phifer – offers no evidence that he actually sought work as a PPA. HBO

also argues that Plaintiffs have failed to raise any genuine issue of material fact on other issues, but it does not appear that the parties have engaged in any discovery relating to those issues.

In response, Plaintiffs seek limited discovery from Defendant pursuant to Fed. R. Civ. P. 56(d), "as to whether the Relevant Hiring Personnel were in a position to hire Plaintiffs when they requested work from them during the entire Relevant Time Period." (Dkt. No. 83 ("Opp."), 13). Plaintiffs state that they "do not wish to continue pursuing litigation if these individuals were truly not in a position to hire Plaintiffs throughout the entire Relevant Time Period" and ask that the Court grant discovery into "(i) the Relevant Hiring Personnel's dates of employment for Defendant during the entire Relevant Time Period; and (ii) the phone number(s) of Clark, who Defendant asserts was employed as Coordinator for it after the Bar Date." (*Id.* at 13-14). Plaintiffs explain that, "These facts are necessary for a determination of whether the Relevant Hiring Personnel were employed by Defendant at any point during the entire Relevant Time Period, and, thus, in position to hire PPAs for Defendant." (*Id.* at 14).

Defendant counters that this is a "purposeless" request and a "futile" attempt to "breathe life into this case" because that evidence is "uniquely in [Plaintiffs'] possession" but they failed to preserve it (and should be sanctioned for spoliation and continued pursuit of a meritless action). (Dkt. No. 85 ("Reply"), at 1).

## STANDARD

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant[s] [are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. At summary judgment, the movants bear the initial burden of

demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004).

Once the movants meet that burden, the non-movants may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 248; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). To survive summary judgment, the non-movants must present concrete evidence and rely on more than conclusory or speculative claims. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980). In assessing the record to determine whether genuine issues of material fact are in dispute, a court must resolve all ambiguities and draw all reasonable factual inferences in favor of the non-moving party. *See Parkinson v. Cozzolino*, 238 F.3d 145, 150 (2d Cir.2001).

## DISCUSSION

As explained above, "a plaintiff alleging retaliation under FLSA must first establish a prima facie case of retaliation by showing (1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins*, 626 F.3d at 53.

At this point, only twelve of the fifteen plaintiffs proffer any evidence at all that would be competent to establish a prima facie case of retaliation. HBO's responses to their evidence are two: the individuals these Plaintiffs contacted were not employed as PPA Supervisors by HBO at the times they were contacted by Plaintiffs and so were not in any position to offer them work on HBO productions; and only one of the Plaintiffs (Phifer) alleges that he contacted any purported PPA supervisor within the very brief period following the settlement of the *Fermin* action when, under Second Circuit law, retaliatory intent can be inferred in the absence of direct evidence of retaliation

(more on this below).

HBO's first defense – these people did not work for us at the time they were contacted – is not something the parties have explored in discovery, although there is absolutely no reason why that could not have happened by now. I am denying HBO's motion for summary judgment as to the following Plaintiffs – Michael Sapia, Andrea Barnes, Allan Bennett, Anthony Birkbeck, Kendal Brazel, Alexander Campbell, Raynier Delgadillo, Shierba Jackson, Miguel Morel, Garnett Morgan, Christian Pellot, Gary Phifer, and Ali Muhammad – without prejudice to renewal after Plaintiffs have taken discovery on the issue of whether HBO did in fact employ the individuals – Maurice Cabrera, James Gentles, David Staton, Cesar Aponte, Leo Driver, Lloyd Bent, Kareem Ottley, Gregory Offut, and Kerry Clark – who were identified as having been contacted by the individual plaintiffs when they were looking for work, and whether those individuals were in a position to offer Plaintiffs work on HBO productions at the time they were contacted. Obviously, that would include discovery of any so-called "Hiring personnel" at HBO who may have communicated with the individuals listed above.

Plaintiff Bennett swears by affidavit he also contacted an "Erin" and a "Buck" who were PPA supervisors whose last names he does not know. (Dkt. No. 84-3, ¶10). Defendant states in its Rule 56.1 Statement that Cast & Crew Payroll, LLC conducted a reasonable diligent search of all payroll records and was unable to find a record of any individuals with the first name of Buck working as parking personnel in any capacity and no one named Erin working for any HBO entity during the relevant period. (*See.* Dkt. No. 83-1, ¶¶64, 63). The parties are free to take discovery about Erin and Buck, but it does not seem likely to get Bennett anywhere.

As to retaliatory intent, Plaintiffs must either submit "evidence of retaliatory animus directed against a plaintiff by the defendant," *Johnson v. Palma,* 931 F.2d 203, 207 (2d Cir.1991)

(internal quotation marks and citation omitted), or show that "the protected activity was closely followed in time by the adverse action." *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons,* 842 F.2d 590, 593 (2d Cir.1988) (citation omitted). "A close temporal relationship between the exercise of a protected right and an adverse employment action can, in some cases, sustain the conclusion that the action was a retaliation for the exercise of the right." *Kim v. Goldberg, Weprin, Finkel Goldstein, LLP,* 862 F.Supp.2d 311, 319 (S.D.N.Y. 2012). While the Second Circuit has "never established a temporal bright line beyond which an adverse employment action cannot qualify as retaliatory," *Hubbard v. Total Commc'ns, Inc.,* 347 F. App'x 679, 681 (2d Cir. 2009) (citing *Gorman–Bakos v. Cornell Co-op Extension of Schenectady County,* 252 F.3d 545, 554 (2d Cir.2001)), "Nonetheless, district courts within the Second Circuit have consistently held that the passage of more than two to three months between the protected activity and the adverse employment action militates against an inference of causation." *Kim,* 862 F.Supp.2d at 319 (citing *Kamrowski v. Morrison Mgmt. Specialist,* No. 05 Civ. 9234, 2010 WL 3932354, at *22 (S.D.N.Y. Sept. 29, 2010) (collecting cases)).

Of course that does not mean an adverse employment action cannot under any circumstances be retaliatory if committed more than four months after the protected act that allegedly occasioned the retaliation. It just means that, in the absence of any direct evidence tending to suggest that the defendant (here, HBO) directed anyone to deny any plaintiff employment after October 1, 2016, in retaliation for protected conduct (here, for the plaintiff's participation in the *Fermin* Action), a plaintiff cannot claim retaliation if too much time has passed between the protected action and the alleged retaliation.

Only two of the plaintiffs have, during what I will call the First Phase of discovery, evidenced any efforts they made within four months of the end of the *Fermin* case to obtain

employment as a PPA. Those plaintiffs are Raynier Delgadillo and Christian Pellot.

While Gary Phifer testifies as to contacts that he made to PPA Coordinator Clark in temporal proximity to October 2016, he submits no phone records of these contacts because he allegedly no longer knows Clark's phone number. Plaintiffs' counsel explain they could not isolate data related to contacts with Clark. Plaintiff Phifer asks for discovery as to Clark's phone number in order to retrieve the records. That request is denied. Clark is a non-party and discovery of his phone number is an unnecessary intrusion into his privacy. *See e.g.*, *Hernandez v. Immortal Rise, Inc.*, No. 11 CV 4360(RRM)(LB), 2012 WL 4369746, at *9 (E.D.N.Y. Sept. 24, 2012) ("due to privacy concerns, the courts in this circuit" may find it improper to require "defendants to produce telephone numbers" of non-parties). If Plaintiff Phifer failed to preserve Clark's number, that failure is on him and the Court sees no need to order discovery of Clark's phone number in order to corroborate Phifer's claims, where Phifer was the one who should have preserved the evidence of his contact with Clark.

No other plaintiff submits evidence that the protected activity was closely followed in time by the alleged adverse action. Therefore, Plaintiffs Andrea Barnes, Allan Bennett, Anthony Birkbeck, Kendal Brazel, Alexander Campbell, Shierba Jackson, Miguel Morel, Garnett Morgan, and Michael Sapia can only succeed on establishing a prima facie case if they have direct evidence of retaliatory animus on HBO's part.

Plaintiffs are entitled to discovery on the issue of whether anyone at HBO ever told anyone with the power to hire PPAs that they were not to give HBO work to *Fermin* plaintiffs. Plaintiffs may have other ideas about how to establish retaliatory animus by direct evidence (though the Court can think of none); Magistrate Judge Lehrburger will superintend discovery and ensure that it focuses on this point and does not go too far afield.

Plaintiffs have 120 days to complete discovery. HBO may, if it wishes, notice discovery as well, including taking depositions of Plaintiffs.

I fault the parties for not pursuing discovery earlier, and I fault myself for not having paid closer attention to the fact that the parties were reading stays that were not there into my discovery order that were not there. I would have expected a great deal of discovery to be taken by now. We must all share the blame for the fact that it has not been.

At the conclusion of discovery, HBO has 60 days to refile motions for summary judgment against the individual plaintiffs. The next time around, HBO must discuss the evidence as to each plaintiff individually, because that is how the Court will be deciding the motion.

Three of the fifteen plaintiffs failed to respond to HBO's motion with any evidence that would satisfy their burden of going forward.

Plaintiff Shamarl Wilson provides no evidence, and Plaintiffs' counsel does not oppose Defendant's motion to dismiss Wilson from the case. (*See* Opp. at 1; Reply at 1 n. 1). Wilson's claims are dismissed with prejudice.

In response to the Court's September 19, 2019 discovery order, Plaintiff Neftali Pellot apparently provided Defendant with two Facebook communications between himself and with Cesar Aponte – alleged to be a PPA supervisor for Defendant – dated November 28, 2018 and April 10, 2019. (*See* Dkt. No. 77-8, at 5). However, the text of those communications is not in the record on the current motion. Moreover, Plaintiffs' counsel have been unable to reach N. Pellot since the summary judgment motion was filed; his phone is no longer accepting calls, emails and letters have also failed. (Dkt. No. 83, at 1 n 1). Therefore, Plaintiffs' counsel have not responded to the Defendant's motion insofar as it pertains to N. Pellot. They also have not moved to be relieved with respect to N. Pellot. And Pellot has not contacted the Court at any time to notify the

Court where he can be found. In the absence of any evidence relating to Neftali Pellot's claims, coupled with the fact that Pellot has effectively abandoned the lawsuit by not advising either counsel or the Court of his whereabouts, they, too, are dismissed with prejudice.

Finally, Plaintiff Ali Muhammad has not participated in this action or provided any evidence in support of his prima facie case, although he has been served with all papers in this case. In light of his *pro se* status, the Court is not going to dismiss his claims today. However, when HBO renews its motion as to Mr. Muhammad, the Court will advise him that he must respond with evidence or his claims will be dismissed with prejudice. And if Mr. Muhammad fails to participate in discovery, that can and should be called to the Court's attention at the earliest opportunity.

**Sanctions Are Not Warranted**

Having decided that the Defendant's summary judgment motion is dismissed without prejudice to renewal after further discovery has taken place, I need not decide the request for sanctions on this motion. In any event and for the following reasons, the Court finds that sanctions are not merited at this stage. Defendant's request for sanctions is denied.

Defendant seeks three types of sanctions on three grounds: (1) Rule 37(b)(2) discovery sanctions against Plaintiffs for Plaintiffs' "patently deficient" compliance with this Court's September 19, 2019 Order; (2) Rule 37(e) sanctions against Plaintiffs for spoliation of Electronically Stored Information ("ESI"), specifically text messages; and (3) Section 1927 Sanctions against Plaintiffs' counsel for unreasonably and vexatiously multiplying the proceedings. Defendant asks that the Court award Defendant: (1) an adverse inference against Plaintiffs that the unpreserved documents did not support, and may have contradicted, their claims that they sought work with HBO, (2) an order of preclusion barring Plaintiffs from testifying that

they sought work with HBO, and (3) an award of HBO's costs and fees incurred in connection with this motion.

<u>Rule 37(b)(2) Discovery Sanctions</u>

Several factors are considered when weighing whether to "impose [discovery] sanctions pursuant to [Rule 37(b)(2)] , including '(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance.'" *Southern New England Telephone Co. v. Global NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010) (quoting *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir.2009)). "[T]he district court has 'wide discretion in imposing sanctions under Rule 37' . . . these factors are not exclusive, and they need not each be resolved against the party" being sanctioned for the sanctions to be "within the court's discretion." *Id.* (quoting *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 135 (2d Cir.2007)).

Here, Defendant contends that sanctions are warranted because Plaintiffs' response to the Court's September 19, 2019 Order was "patently deficient." Specifically, Defendant explains that the spreadsheet Plaintiffs turned over to Defendant – in which Plaintiffs identified each instance of alleged retaliation after October 1, 2016 – was "contradicted by the records that their cell phone carriers produced" and that Plaintiffs did not turn over all their text messages because they "failed to preserve" those messages. Plaintiffs counter that the spreadsheet was based on Plaintiffs' "documentation and recollection" before they had obtained the phone records from the phone company; once Plaintiffs were able to get a subpoena for the phone records, they produced those records to Defendant on a rolling basis. Plaintiffs also counter that they produced all the text messages in their possession, custody, or control at the time of the Order. Defendant's own

submissions show Plaintiffs did turn over text messages for some Plaintiffs. (*See* Dkt. No. 77-8).

The Court declines to impose sanctions pursuant to Rule 37(b)(2). Plaintiffs complied with this Court's September 19, 2019 Order by producing a spreadsheet to Defendant within the 60 day time frame with the information required by the Order; Plaintiffs further sought to obtain the phone records from third parties that would elucidate the information in the spreadsheet; and Plaintiffs turned over what text messages were in their possession. There does not appear to be the type of willful noncompliance that merits sanctions.

As to the alleged destruction of ESI, that issue is better considered in conjunction with Defendant's second request for spoliation sanctions pursuant to Rule 37(e), as follows. *See In re Gorsoan Ltd.*, No. 17-CV-5912 (RJS), 2020 WL 3172777, at *8 (S.D.N.Y. June 15, 2020) (the "requisite showing" for spoliation sanctions under Rule 37(b) is the same as under Rule 37(e)).

<u>Rule 37(e) Spoliation Sanctions</u>

Spoliation is defined as "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (citing Black's Law Dictionary 1401 (6th ed. 1990)). "Under Federal Rule of Civil Procedure 37(e), a court may sanction a party for failing to take reasonable steps to preserve electronically stored information that cannot be restored or replaced through additional discovery upon a finding that 'the party acted with the intent to deprive another party of the information's use in the litigation.'" *Rhoda v. Rhoda*, No. 14-CV-6740 (CM), 2017 WL 4712419, at *1 (S.D.N.Y. Oct. 3, 2017) (quoting Fed. R. Civ. P. 37(e)(2)).

Defendant "must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a

culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.'" *Rhoda*, 2017 WL 4712419, at *1. "A party seeking spoliation sanctions has the burden of establishing the elements of a spoliation claim by a preponderance of the evidence." *Id.*

Here, it is undisputed that Plaintiffs were under an obligation to preserve emails, text messages and other electronic communications that are relevant to their claims, from and after the time when they contacted a lawyer about filing this lawsuit in February 2018. It is undisputed that some of the Plaintiffs did not do so. Defendant argues, "This compels one of two conclusions: either Plaintiffs realized that these text message exchanges are more harmful than helpful to their claims, or they have failed to preserve relevant evidence." (Br. 16). Plaintiffs counter that Defendant "does not argue that the text messages were knowingly destroyed or what Plaintiffs' mindset was when they failed to preserve the text messages," and contends that the messages are not "permanently lost or unrecoverable" because they can be "recovered through additional discovery from the Hiring personnel." (Opp. 17). That may or may not be true: the PPAs are not parties to this lawsuit, and as far as this Court knows they were under no obligation to preserve evidence once the lawsuit was filed. I can think of no reason why they should have preserved messages when Plaintiffs – who were seeking to recover from HBO – did not. Moreover, I certainly can see no reason why anyone other than Plaintiffs should bear the expense of a search to locate messages that the Plaintiffs themselves were obligated to keep – and to give to their lawyers, who should have reviewed them as part of their Rule 11 due diligence and then maintained them.

Plaintiffs' counsel have represented to the Court that they instructed their clients on at least four occasions, both orally and in writing, of the need to preserve evidence and have produced all text messages in their possession. (Opp. 24; Dkt. No. 84, ¶¶ 2-3; Dkt. No. 84-17, ¶¶ 2-, 7-8, 14,

16-18). Plaintiffs' counsel do not attach any of these written communications, but they submit two affidavits specifying that, as to written notifications, "VKV's retainer agreement with Plaintiffs places them on notice of their legal obligation to preserve all relevant documents related to their legal claims against Defendant." (Dkt. No. 84, ¶ 2). Counsel Alexander White and Matthew Berman specify in their affidavits that, in addition to the obligations set forth in the retainer agreement, on February 14, 2017, in or around December 2018, on September 19, 2019, and again on August 12, 2020, and August 19, 2020, they had further written (via letter) or oral communications with various Plaintiffs regarding their ongoing obligation to preserve evidence. (Dkt. No. 84, ¶¶ 2-3; Dkt. No. 84-17, ¶¶ 2-, 7-8, 14, 16-18). Of course, most of these communications occurred well after the lawsuit was filed – by which time counsel should have collected and reviewed their clients' communications with alleged representatives of HBO. Significantly, counsel also do not represent that they made any effort, while discharging their Rule 11 obligations prior to bringing suit, to gather up any evidence that their clients might have that the lawyers knew – even if the Plaintiffs did not know – would be discoverable in this case.

Plaintiffs' counsel admits that, "For the most part, however, it appears that Plaintiffs did not adhere to their counsel's instructions." (Opp. 24). They do not identify specifically which of their clients did and which did not – which is understandable, since they owe a duty of loyalty even to those clients who did not preserve their text messages.[4] Only four Plaintiffs – Bennett, Brazel, Morel, and C. Pellot – directly admit in their affidavits to failing to preserve text messages. (*See* Dkt. Nos. 84-3, ¶19; 84-5, ¶18; 84-9, ¶15; 84-11, ¶17). The other seven Plaintiffs who filed affidavits – Barnes, Birkbeck, Cambell, Delgadillo, Jackson, Morgan, and Phifer – do not

---

[4] The court appreciates the uncomfortable position in which plaintiffs' counsel find themselves, having to defend their own adequacy of representation and compliance with the rules while not compromising the rights of persons they still represent. That is, however, a problem of their own making.

affirmatively state that they failed to preserve text messages but imply that they did so. (*See* Dkt. Nos. 84-2, ¶¶13-14; 84-4, ¶¶15-16; 84-6, ¶¶9-10; 84-7, ¶¶17-18; 84-8, ¶¶15-16; 84-10, ¶¶10-11;84-12, ¶¶12-13). None of the Plaintiffs specifies when or why they got rid of text messages (whether it was prior to being told to preserve them or after). As a result, the Court has no way of ascertaining at this moment which Plaintiffs may have gotten rid of text message prior to being told to preserve them (those Plaintiffs would never merit spoliation sanctions) and which ones ignored their lawyers' instructions (those Plaintiffs, frankly, might well merit spoliation sanctions).

Plaintiffs, predictably, all swear by affidavit that they did not destroy any text messages with intent to deprive Defendant of those messages. On the present state of the record, and without a frolic and detour that might well result in the severance of the attorney-client relationship, this Court cannot conclude that any Plaintiff should be sanctioned for spoliation of evidence. That is not to say that the day might not come when such an inquiry could appropriately be made. However, I decline to impose the "extreme sanction" of an adverse inference at this juncture. *See Rhoda*, 2017 WL 4712419, at *1 (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 219-20 (S.D.N.Y. 2003)) ("The adverse inference instruction is an 'extreme sanction and should not be given lightly.'"). The difficulty that Plaintiffs who destroyed text messages are likely to have in proving their case may well turn out to be sanction enough.

<u>Section 1927 Sanctions</u>

Section 1927 of the Judiciary Code permits a court to impose liability on a party's counsel, in addition to the party itself, for "multipl[ying] the proceedings in any case unreasonably and vexatiously." 28 U.S.C. §1927. Liability under Section 1927 is appropriate when the court finds "clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith — that is, motivated by improper purposes such as harassment or delay."

*Huebner v. Midland Credit Management, Inc.*, 897 F.3d 42, 55 (2d Cir. 2018) (internal citations omitted).

Here, Defendant argues that Section 1927 Sanctions are merited because the spreadsheet proffered to Defendant in response to this Court's September 19, 2019 Order was "unsupported and/or contradicted by the cell phone records subpoenaed from providers," because Plaintiffs' counsel "failed to ensure that Plaintiffs preserved . . . text messages," and because "VKV should have voluntarily dismissed this action" long ago but has "continue[d] to pursue this litigation." (Br. 18-19).

The Court finds that Defendant has failed to show that Plaintiffs' claims are "entirely without color" and "brought in bad faith." *See Huebner*, 897 F.3d at 55. As to the spreadsheet and the phone records, as discussed previously, Plaintiffs' counsel explains that the spreadsheet was based on recollections prior to obtaining the records but Plaintiffs' counsel sought phone records once they had a subpoena to do so and the phone records confirm that Plaintiffs have sought work as PPAs with the Defendant after opting into the *Fermin* action, even if they do not match Plaintiffs' earlier recollections exactly.

I have discussed the text messages above and explained why, at this juncture, I am not prepared to press the inquiry into this matter.

Finally, as to the merit of the Plaintiffs' claims, to date Plaintiffs' counsel has dismissed, withdrawn from representation or agreed not to pursue the claim of every Plaintiff who could not produce convincing evidence or "commit to a sworn statement" regarding their claims of retaliation. (*See* Opp. 22). Plaintiffs' counsel also agree that "this matter should not proceed" if further discovery should reveal that "the Hiring Personnel that Plaintiffs contacted during the Relevant Time Period for employment were indeed [not] in a position to hire them." (*Id.* at 23).

Of course, why those claims were ever brought in the first place is highly questionable, but at this point, counsel maintains that the personnel contacted were in such a position, and it is "objectively reasonable" at this stage for counsel to rely on Plaintiffs' claims to that effect. *See Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1329 (2d Cir. 1995) ("An attorney is entitled to rely on his or her client's statements as to factual claims when those statements are objectively reasonable."). It remains to be seen whether that be true or not. But I will not grant any Section 1927 Sanctions motion against counsel today.

## CONCLUSION

For the foregoing reasons, the Defendant's motion for summary judgment is GRANTED in part, DENIED in part.

Defendant's motion to dismiss the claims of Shamarl Wilson and Neftali Pellot is GRANTED. These Plaintiffs' claims are dismissed with prejudice.

Defendant's motion to dismiss the claims of Plaintiffs Michael Sapia, Andrea Barnes, Allan Bennett, Anthony Birkbeck, Kendal Brazel, Alexander Campbell, Raynier Delgadillo, Shierba Jackson, Miguel Morel, Garnett Morgan, Christian Pello, Gary Phifer, and Ali Muhammad is DENIED without prejudice to renewal.

Plaintiffs' request for discovery is GRANTED. Plaintiffs may take discovery on the following questions:

1. Whether HBO did in fact employ the individuals allegedly contacted by the 13 remaining individual Plaintiffs -- Michael Sapia, Andrea Barnes, Allan Bennett, Anthony Birkbeck, Kendal Brazel, Alexander Campbell, Raynier Delgadillo, Shierba Jackson, Miguel Morel, Garnett Morgan, Christian Pello, Gary Phifer, and Ali Muhammad -- at the times that Plaintiffs' contacts were allegedly made, and whether these individuals -- Maurice Cabrera,

James Gentles, David Staton, Cesar Aponte, Leo Driver, Lloyd Bent, Kareem Ottley, Gregory Offut, and Kerry Clark – were in a position to offer Plaintiffs work on HBO productions; and

2. Whether anyone at HBO communicated to anyone with the power to hire PPAs any desire that *Fermin* plaintiffs not be hired to work on HBO productions.

Plaintiffs have 120 days to take the necessary discovery on these issues.

HBO may, if it wishes, notice discovery as well, including depositions of the Plaintiffs.

Defendant's request for sanctions is DENIED.

The stipulation of dismissal filed by Rafael Diaz, Errol Brown, Dionicio Chambers, Howard Harrison, Colette Sajjad, Clinton Spence, Winston Blackwood, John Carussi (Dkt. No. 82) is deemed so ordered as of the date of this order, and these Plaintiffs' claims are dismissed with prejudice.

In accordance with the foregoing decision, the claims of Plaintiff Curtis Neil are dismissed without prejudice, and the claims of Plaintiffs Ravi Dhanasar and Hameen Rashullah are dismissed with prejudice.

This constitutes the opinion and order of the Court. It is a written opinion. The Clerk is directed to close the motion at Docket Number 73.

Dated: March 14, 2022

_____
U.S.D.J.

BY ECF TO ALL COUNSEL